## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GAINESVILLE HOSPITAL DISTRICT | § | Case No. 17-40101 |
| D/B/A NORTH TEXAS MEDICAL | § | |
| CENTER,[1] | § | |
| | § | Chapter 9 |
| DEBTOR. | § | |

### DEBTOR'S EMERGENCY MOTION FOR APPROVAL OF
### AGREEMENT FOR POSTPETITION SECURED CREDIT

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Gainesville Hospital District d/b/a North Texas Medical Center (the "Debtor") files this *Emergency Motion for Approval of Agreement for Postpetition Secured Credit* (the "Motion") for entry of an interim order (attached hereto as **Exhibit 1**):  (i) authorizing the Debtor to obtain postpetition financing pursuant to section 364 of title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.* (the "Bankruptcy Code"); and (ii) scheduling a final hearing on the Debtor's motion to incur such financing on a permanent basis (the "Final Hearing") pursuant to Rule 4001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  In support of this Motion, the Debtor relies upon and incorporates by reference the *Declaration of Ramin Roufeh in Support of Debtor's Chapter 9 Petition and Other Motions* (the "Declaration"), which was filed with the Court concurrently herewith.  In further support of the Motion, the Debtor respectfully shows the Court as follows:

### JURISDICTION AND BACKGROUND

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).  Venue is proper in

---

[1] The last four digits of the Debtor's federal tax identification number are: 1664. The location of the Debtor's principal place of business and the service address for the Debtor is:  1900 Hospital Blvd., Gainesville, TX 76240.

this Court pursuant to 28 U.S.C. §§ 1408 and 1409. The statutory predicates for the relief requested herein are sections 901 and 364 of the Bankruptcy Code.

2. On January 17, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 9 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"), thereby commencing the above-captioned municipal debt adjustment case (the "Case").

3. The Debtor is a rural public hospital district operating as North Texas Medical Center (the "Hospital") and located in Gainesville, Texas. Additional details regarding the Debtor and the events leading to the commencement of this Case as set forth in the Declaration.

4. Universal Health Services, Inc. ("UHS" or the "Lender") is one of the largest hospital management companies in the country. UHS subsidiaries own or operate more than 240 acute care hospitals and behavioral health facilities in 37 states. UHS and the Debtor have engaged in good-faith negotiations centered around the Debtor leasing the Hospital to UHS, which contemplate that UHS will assume responsibility for the continued operations of the Hospital and all operation and maintenance costs to provide medical care to the Hospital's residents, including the needy.

5. The Debtor and the Lender have also engaged in extensive negotiations, over the course of the days leading up to the commencement of this Case, regarding the terms of a commitment letter to secure postpetition financing for the Debtor. Those negotiations, which were conducted at arm's length, resulted in a commitment from the Lender for a postpetition financing facility on an interim and final basis (inclusive of amounts advanced on an interim basis) (the "DIP Loan"). The amount of the DIP Loan will be in a maximum amount equal to Seventy-Five Percent (75%) of the sum of (1) the Debtor's outstanding accounts receivable that

are less than 91 days old as of the date of determination and (2) the Debtor's tax revenue due from Cooke County, Texas that is available for hospital operations as of the date of determination.

6. In order to determine the Debtors' funding needs during this Case, the Debtor has, with the assistance of its advisors, analyzed its projected expenses to determine what is necessary to maintain its operations and foster a successful business plan of adjustment. This process resulted in the development of a 4-week cash flow budget, attached hereto as **Exhibit 2** (the "Budget").

## RELIEF REQUESTED

7. The Debtor seeks entry of an interim order in substantially the form attached as **Exhibit 1** (the "Interim Order") under Bankruptcy Code §§ 361, 364(c) and Bankruptcy Rules 4001(d) and 9014 to: (i) approve the agreement between the Debtor and the Lender authorizing the Debtor to obtain postpetition credit from the Lender on an interim basis in a maximum amount equal to Seventy-Five Percent (75%) of the sum of (1) the Debtor's outstanding accounts receivable that are less than 91 days old as of the date of determination and (2) the Debtor's tax revenue due from Cooke County, Texas that is available for hospital operations as of the date of determination., cumulative of any amounts advanced on an interim basis; and (ii) schedule a final hearing on this Motion to consider entry of the Final Order.

## SUMMARY OF RELIEF REQUESTED

8. The DIP Loan will be provided in accordance with the terms and conditions set forth herein and in the Note, Loan Agreement, and related loan documents (the "DIP Loan Agreement").

9. In compliance with Bankruptcy Rule 4001(d) and (c), the Debtor makes the following concise statement about the relief requested herein:

a. **Borrower**: Gainesville Hospital District d/b/a North Texas Medical Center, 1900 Hospital Blvd., Gainesville, Texas 76240.

b. **Lender**: Universal Health Services, Inc., 367 South Gulph Road, King of Prussia, Pennsylvania 19406, or its designated affiliate.

c. **Facility Amount**: A maximum amount equal to Seventy-Five Percent (75%) of the sum of (1) the Borrower's accounts receivable that are less than 91 days old as of the date of determination and (2) the Borrower's tax revenue due from Cooke County, Texas that is available for hospital operations as of the date of determination.

d. **Purpose**: The Debtor will use the borrowings under the DIP Loan to: (i) fund the Debtor's operations until the Lender leases the Hospital and begins operations of the Hospital, all in accordance with the terms and conditions of the DIP Loan Agreement and consistent with the initial estimated budget attached **Exhibit 2** and subsequent budgets as agreed between the parties (the "Budget"); and (ii) pay fees and expenses related to this transaction and the Case. Expenses to be funded by the borrowings are to be approved by the Lender at the Lender's discretion.

e. **Term**: The date of repayment of all sums borrowed by the Debtor under the DIP Loan Agreement will be the effective date of the Hospital's plan of adjustment or dismissal of this Chapter 9 proceeding or the expiration of the Hospital's management agreement, whichever occurs first.

f. **Interest Rate**: The interest rate on the DIP will be: Twelve Percent (12%).

g. **DIP Collateral**: Claims arising under the DIP Facility (the "DIP Claims") shall have priority and shall be secured by liens and collateral as set forth below: (a) pursuant to section 364(c)(1) of the Bankruptcy Code, the DIP Claims will be entitled to super-priority administrative expense status in the Chapter 9 case; (b) pursuant to section 364(c)(2) of the Bankruptcy Code, the DIP Facility will be secured by a first-priority perfected senior lien on (i) all inventory of Borrower; (ii) all depository accounts of Borrower holding the proceeds of accounts receivable; (iii) to the extent permitted by law, equipment; and (iv) all accounts receivable of Borrower, including tax revenue receivables; *but excluding* (A) Avoidance Actions and (B) healthcare receivables to the extent that such receivables cannot be subject to a security interest; (c) pursuant to section 364(c)(3) of the Bankruptcy Code, the DIP Facility will be secured by a perfected junior lien on all property and assets of the Borrower that are subject to valid and enforceable prior liens; *but excluding* Borrower's real estate; and (d) pursuant to section 364(d)(1) of the Bankruptcy Code, the DIP Facility will be secured by (i) a first priority perfected senior priming lien on the Borrower's non-real estate assets that is senior to and primes any liens securing any prepetition financing arrangement with the Borrower, and (ii) any liens and/or security interests properly perfected and enforceable as of

the date of the filing of the Case. The aforementioned provisions shall remain in effect if the Interim Order is entered but the Final Order is not.

h. **Stipulations as to Liens and Security Interests of Lender:** (i) Notwithstanding anything to the contrary herein, the Debtor acknowledges that the security interests and liens of the Lender are valid, perfected, and nonavoidable. (ii) No liens or security interests granted pursuant to this Motion shall prime prior, perfected, liens of any other parties, subject to any rights of the Debtor to avoid such prior lien. (iii) For the sake of clarity, nothing provided herein shall be deemed to authorize or grant to Lender liens in any Chapter 5 avoidance actions.

## BASIS FOR RELIEF REQUESTED

10. For the following reasons, the Debtor respectfully submits that it has satisfied the standards applicable for approval of the DIP Loan.

11. The Debtor asserts that the DIP Loan is in the best interests of the Debtor, its patients, creditors, and other parties in interest. The ability to obtain sufficient working capital and liquidity through the DIP Loan is vital to the preservation of its medical-care operations and the maximization of the value of the Debtor's assets and to successfully adjust the Debtor's debts.

12. Without access to the DIP Loan, the Debtor does not have sufficient available sources of working capital or cash to assure the continuous operation of its hospital. The proposed postpetition financing will fund necessary expenses of operation in the ordinary course, payroll, and purchase supplies, and otherwise provide hospital and medical care services, pay adjusting costs, and pay other essential costs as the Debtor moves toward the negotiation and confirmation of a plan of adjustment.

13. The Debtor's ability to borrow under the DIP Loan Agreement is necessary to avoid immediate and irreparable harm to the Debtor; and in order to maintain normal operations in the crucial first days of the Case, the Debtor is requesting an emergency interim hearing on

this Motion. The Debtor has filed a separate request for emergency hearing concurrently with this Motion.

14.     The Debtor proposes to obtain financing under the DIP Loan by providing security interests and other liens as set forth above pursuant to section 364(c) of the Bankruptcy Code, made applicable to this Case by section 901. As a condition of the DIP Loan, the Debtor proposes pledging all of the Debtor's assets of any kind, to the extent permitted by law. The statutory requirement for obtaining postpetition credit under section 364(c) of the Bankruptcy Code if a finding, made after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under section 503(b)(1) of the [Bankruptcy Code]." 11 U.S.C. § 364(c).

15.     To show that postpetition financing is not obtainable on an unsecured basis, a debtor need only demonstrate "by a good faith effort that credit was not available without" the protections of section 364(c). *Bray v. Shenandoah Fed. Sav. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986). Thus, "[t]he statue imposes no duty to seek credit from every possible lender before concluding that such credit is unavailable." *Id.* at 1088. Moreover, where few lenders are likely to be able and willing to extend necessary credit to the debtor, "it would be unrealistic and unnecessary to require [the debtor] to conduct an exhaustive search for financing." *In re Sky Valley, Inc.*, 100 B.R. 107, 113 (Bankr. N.D. Ga. 1988).

16.     Due to, among other things, the Debtor's strained financial condition and its small town location and rural operations, the Debtor has been and is unable to obtain unsecured credit under Bankruptcy Code § 503(b)(1). The Debtor firmly believes that postpetition financing on an unsecured basis within the timeframe necessary is unobtainable.

17.     The terms of the DIP Loan and adequate protection arrangements were negotiated at arm's-length, are fair and reasonable under the circumstances, and reflect the exercise of

prudent business judgment by the Debtor consistent with its fiduciary duties. The proposed DIP Loan will provide the necessary liquidity the Debtor needs to operate its hospital while pursuing a plan of adjustment. The DIP Loan will help to avoid disruption of the operations of the Debtor and will permit the Debtor to meet payroll and other operating expenses, obtain needed supplies, and otherwise maintain normal operations in the provision of medical care to residents of Cooke County and neighboring areas.

18. Provided that its business judgment does not run afoul of the provision of, and policies underlying, the Bankruptcy Code, courts grant a debtor considerable deference in acting in accordance with its business judgment. *See, e.g.*, *In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990) (finding that courts have discretion under § 364 to permit debtors to exercise reasonable business judgment so long as (i) the terms of the financing agreement do not leverage the bankruptcy process and (ii) the financing agreement's purpose is to benefit the estate and not a party in interest).

19. The Debtor submits that it has met the requirements under Bankruptcy Code § 364(c) to obtain postpetition financing from the Lender. Courts in this District have granted, generally, the relief sought herein in other cases. *See, e.g.*, *In re Lon Morris College*, No. 12-60557 (Bankr. E.D. Tex. July 3, 2012) (final order authorizing debtor to obtain postpetition financing); *In re Keating Chevrolet, Inc.*, No. 09-10438 (Bankr. E.D. Tex. Nov. 8, 2011) (same); *In re Energytec, Inc*., No. 09-41477 (Bankr. E.D. Tex. May 15, 2009) (interim order authorizing debtors to enter into postpetition financing agreement and obtain postpetition financing).

## NOTICE

20. Under Bankruptcy Rule 4001, the Debtor shall serve a copy of this Motion by e-mail, facsimile, or overnight delivery upon (i) the proposed limited service list, which includes, but is not limited to, the Lender and their counsel; (ii) the United States Trustee; (iii) those

persons who have formally appeared in the Case and requested service under Bankruptcy Rule 2002; and (iv) all applicable government agencies as required by the Bankruptcy Rules and the Local Rules.

## CONCLUSION

21.     The Debtor respectfully requests that this Court (i) enter the Interim Order in the Motion approving the agreement between the Debtor and the Lender authorizing the Debtor to obtain postpetition credit from the Lender in a maximum amount equal to Seventy-Five Percent (75%) of the sum of (1) the Debtor's outstanding accounts receivable that are less than 91 days old as of the date of determination and (2) the Debtor's tax revenue due from Cooke County, Texas that is available for hospital operations as of the date of determination on an interim and final basis, cumulative of any amounts advanced on an interim basis, (ii) schedule a final hearing on the Motion at which time the Debtor will seek the Court's entry of the Final Order, and (iii) grant such other and further relief to the Court deems equitable and just.

Dated: January 17, 2017 Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By: */s/ William R. Greendyke* ,
   William R. Greendyke (SBT 08390450)
   Julie Goodrich Harrison (SBT 24092434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

AND

Ryan E. Manns (SBT 24041391)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
ryan.manns@nortonrosefulbright.com

**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that a true and correct copy of the foregoing was served by the Electronic Case Filing system for the United States Bankruptcy Court for the Eastern District of Texas and in the manner and to the persons set forth in paragraph 20.

                                         By: */s/ William R. Greendyke*