**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GAINESVILLE HOSPITAL DISTRICT | § | Case No. 17-40101 |
| D/B/A NORTH TEXAS MEDICAL | § | |
| CENTER,[1] | § | |
| | § | Chapter 9 |
| DEBTOR. | § | |

**EMERGENCY MOTION FOR ORDER AUTHORIZING DEBTOR TO (A) PAY PREPETITION WAGES AND SALARIES TO EMPLOYEES AND INDEPENDENT CONTRACTORS, (B) PAY PREPETITION BENEFITS AND CONTINUE BENEFIT PROGRAMS, AND (C) PAY PREPETITION INSURANCE PREMIUMS**

**TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:**

Gainesville Hospital District d/b/a North Texas Medical Center (the "Debtor") files this *Emergency Motion for Order Authorizing Debtor to (A) Pay Prepetition Wages and Salaries to Employees and Independent Contractors, (B) Pay Prepetition Benefits and Continue Benefit Programs, and (C) Pay Prepetition Insurance Premiums* (the "Motion"). In support of this Motion, the Debtor relies on the *Declaration of Ramin Roufeh in Support of Debtor's Chapter 9 Petition and Other Motions* (the "Declaration"). In further support of this Motion, the Debtor respectfully shows the Court as follows:

**BACKGROUND**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's federal tax identification number are: 1664. The location of the Debtor's principal place of business and the service address for the Debtor is: 1900 Hospital Blvd., Gainesville, TX 76240.

27861887.4  - 1 -

2. On January 17, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"), thereby commencing the above-captioned municipal debt adjustment case (the "Case").

3. Gainesville Hospital District (the "District") was created pursuant to Chapter 211, 64th Legislature, 1975, now codified as Chapter 1077 Texas Special District Local Laws Code, as amended, and owns and operates North Texas Medical Center (the "Hospital"), an acute care hospital in Gainesville, Texas.

4. The Debtor is a "health care business" as defined in 11 U.S.C. § 101(27A).

5. The Debtor provides acute medical care, outpatient services, rehabilitation services, a swing bed program, and clinic services. The Hospital is licensed for 60 beds and the Debtor has approximately 254 employees. The Hospital serves as the primary care and acute care center for Gainesville, Texas, Cooke County, and portions of the surrounding counties. The Hospital is also a designated Trauma Level 4 facility offering 24-hour emergency services. The Hospital offers a wide range of essential services, including laboratory, medical imaging, cardiology, orthopedics, and rehabilitation.

6. Additional details regarding the Debtor and the events leading to the commencement of this Case as set forth in the Declaration.

**The Debtor's Compensation and Benefits Structure**

7. The Debtor employs 254 individuals, of whom 21 work on an annual salary basis and 233 individuals work on an hourly basis, and the Debtor also has 5 independent contractors who help run the Hospital's day-to-day operations (collectively, the "Employees"). The Debtor pays all of its Employees on a bi-weekly basis for the current period. The Debtor funded its

payroll on or about January 6, 2017, which paid all employees through December 30, 2016. The employees' next payroll date will be on January 20, 2017, and covers payroll from January 1 through January 14th.

8. In the ordinary course of its business, the Debtor also provides its Employees with certain benefits, including medical, dental and vision insurance, flexible spending accounts, basic and voluntary life and accidental death and dismemberment insurance, a 401(k) retirement savings plan (no match), and paid leave benefits. The Debtor also sponsors several special Employee-funded programs, including a short- and long-term disability benefits program, a supplemental accident/cancer insurance policy, a pre-paid legal services program, and a supplemental general life insurance policy.

9. The Debtor offers vacation to its Employees based upon the length of service and prior experience. The Debtor allows Employees to "cash out" unused paid time off on any pay date at 75% of its accrued value calculated at the base rate in effect at the time of the cash out.

10. The Debtor seeks to pay its Employees for work performed prepetition, to honor other prepetition employee-related obligations and benefits (the "Employee Obligations"), including severance and termination obligations, and to continue paying its employee obligations in the ordinary course of the Debtor's business. In addition, the Debtor seeks authorization for applicable banks to receive, process, honor, and pay any and all checks, electronic fund transfers, and automatic payroll transfers drawn on the Debtor's payroll and/or general disbursement accounts, to the extent that such checks or transfers relate to any of the prepetition Employee Obligations.

11. The continued operation of the Hospital and its successful reorganization depends largely upon the retention of the services of the Employees and the maintenance of Employee

morale and cooperation. Consequently, it is critical that the Debtor be authorized to satisfy its Employee Obligations and continue their ordinary course Benefit Plans and programs in effect as of the Petition Date. Moreover, if the checks issued and fund transfers requested in payment of the prepetition Employee Obligations are not honored, or if such earned obligations are not timely paid post-petition, the Debtor's Employees could suffer extreme personal hardship and may even be unable, in some instances, to pay their daily living expenses. In addition, it would be inequitable to require the Debtor's Employees to bear personally the cost of any business expenses they incurred prepetition for the benefit of the Debtor with the understanding that they would be reimbursed. The amount of such reimbursement relating to prepetition periods is estimated to be zero.

12. The Debtor, in the ordinary course of business, also accrues state, local and federal employment and withholding taxes relating to wages earned by the Debtor's Employees, which taxes are calculated based upon statutorily mandated percentages of earned wages. The Debtor has historically timely paid all employment and withholding taxes to the relevant taxing authority by check or automated transfer as required, which is usually on a monthly or quarterly basis, or immediately prior to, on or within a specified number of days of, each payroll date.

**The Debtor's Insurance Policies**

13. The Debtor maintains several insurance policies, the uninterrupted maintenance of which is essential to the Debtor's continued operations and providing the requisite level of patient care, including general liability, professional liability, D&O, commercial property, fiduciary, privacy and network liability, kidnap and random, workers compensation, and automobile.

## RELIEF REQUESTED[2]

14. Notwithstanding the provisions of Bankruptcy Code § 904, and out of an abundance of caution and respect for the Court's jurisdiction, the Debtor seeks specific Court authorization to pay certain prepetition claims, including salaries, wages, benefits, insurance premiums, and reimbursable business expenses incurred before the Petition Date.

15. The Debtor requests that the Court enter an order under Bankruptcy Code § 105(a) (made applicable to chapter 9 proceedings by Bankruptcy Code § 103(f)) granting the Debtor the authority, in its discretion and in the exercise of its business judgment, (a) to pay its Employees for the Employee Obligations, including severance and termination obligations, and to continue to pay its Employee Obligations in the ordinary course of the Debtor's business; (b) to pay any and all amounts due and owing to the Debtor's insurance providers, including any prepetition amounts (the "Insurance Premiums") and to continue the Debtor's various insurance programs (collectively, the "Insurance Policies"); and (c) to collect and pay all taxes attributable to prepetition wages as required by state and federal law, in the ordinary course of business. In addition, the Debtor seeks an order of the Court directing all applicable banks and applicable financial institutions to receive, process, honor, and pay any and all checks, electronic fund transfers, and automatic payroll transfers drawn on the Debtor's payroll and/or general disbursement accounts, to the extent that such checks or transfers relate to any of the prepetition Employee Obligations or Insurance Premiums.

16. The Debtor's current estimate of the total amount of prepetition Employee Obligations, including applicable payroll taxes and the prepetition amounts that will be paid to

---

[2] While the Debtor does not believe it needs court authority to make certain prepetition claims or continue its policies and programs during the Case in the ordinary course of its operations, it includes a request for such relief in an abundance of caution and in the interest of full disclosure.

27861887.4                                                  - 5 -

the Debtor's physicians, is $625,000.  There is also a prepetition balance of approximately $8,000 owed to the Debtor's insurance providers.

17.     Payment of the Employee Obligations and Insurance Premiums is necessary for the Debtor's effective readjustment of its debts.  The Debtor believes that it is crucial for Employee productivity and stability that all employee benefits and payments remain current and are continued throughout the Case.  If the Employees' wages, reimbursements, and benefits are not received in the ordinary course of business, or if the employee benefits are discontinued, employee morale will deteriorate, which, in turn, will substantially and adversely impact the Debtor's ability to complete a successful reorganization.

18.     Further, if the Employee Obligations are not paid in the ordinary course of business, the Employees would suffer personal hardship, and in some cases, would be unable to pay basic living expenses.  This will hurt the Employees and harm the Debtor's ability to continue to provide top-quality patient care as well as to implement its readjustment efforts.  Accordingly, the Debtor seeks authorization to pay all Employee Obligations in the ordinary course of business.

19.     Similarly, the Debtor's efforts to readjust its debts will depend on the maintenance of its Insurance Policies.  The Debtor believes that any party in interest in this Case would expect and require the Debtor to maintain adequate insurance to protect its patients, employees, creditors, and other stakeholders.  The Debtor's failure to pay the Insurance Premiums when they come due could affect its ability to renew the Insurance Policies.  If Insurance Policies are allowed to lapse, the Debtor could be exposed to substantial liability for any harm resulting to persons or property.

## LEGAL BASIS FOR RELIEF REQUESTED

20. Bankruptcy Code § 105(a), which provides in relevant part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title," permits bankruptcy courts to authorize payments on account of certain prepetition claims when necessary to effectuate a successful readjustment. *See* 11 U.S.C. § 105(a); *In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581 (3d Cir. 1981); *In re Gulf Air, Inc.*, 112 B.R. 152, 153 (Bankr. W.D. La. 1989); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174 (Bankr. S.D.N.Y. 1989).

21. Under Bankruptcy Code § 105(a), courts may permit pre-plan payments of prepetition obligations when essential to the continued operation of the debtor's business. Specifically, the court may use its power under section 105(a) to authorize payment of prepetition obligations pursuant to the "necessity of payment" rule (also known as the "doctrine of necessity"), where such payment is essential to the continued operation of the debtor. *See, e.g.*, *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002) (authorizing payment of certain prepetition claims pursuant to "doctrine of necessity" and finding that section 105 provides authority for a debtor-in-possession to pay prepetition claims); *In re Equalnet Commc'ns Corp.*, 258 B.R. 368, 369–70 (Bankr. S.D. Tex. 2000); *In re United Am., Inc.*, 327 B.R. 776, 782 (Bankr. E.D. Va. 2005).

22. Indeed, bankruptcy courts in the Fifth Circuit have recognized the importance of satisfying employee obligations in Complex Chapter 11 cases requesting relief similar to that requested herein. *See, e.g.*, *In re Ultra Petrol. Corp.*, No. 16-32202 (Bankr. S.D. Tex. May 3, 2016); *In re Midstates Petrol. Co.*, No. 16-32237 (Bankr. S.D. Tex. May 2, 2016); *In re Color Star Growers of Colorado, Inc.*, No. 13-42959 (Bankr. E.D. Tex. Dec. 23, 2013); *In re Daisytek, Inc.*, No. 03-34762 (Bankr. N.D. Tex. May 12, 2003).

23. The foregoing rationale for authorizing payments under the "necessity of payment" holds particularly true for the relief requested herein. As set forth in detail above, the Debtor's maintenance of its positive relationships with the Employees its critical to the continued reliability and efficiency of the Debtor's ongoing patient-care operations during the restructuring process. The Debtor's ability to maintain continued and uninterrupted patient care during this crucial time will in turn serve to maximize value for the creditors. Furthermore, it is essential that the Debtor maintain uninterrupted coverage under its Insurance Policies to protect it from liability and protect its patients, creditors, and other stakeholders. Accordingly, the Debtor's ability to pay these prepetition claims is essential to the Debtor's efforts to readjust its debts during this Case.

## REQUEST FOR IMMEDIATE RELIEF

24. Bankruptcy Rule 6003 prohibits the payment of prepetition claims within the first 21 days of the case, expect as necessary to prevent immediate and irreparable harm. For the reasons stated previously herein, the Debtor submits that the relief requested is absolutely necessary to prevent immediate and irreparable harm to the Debtor.

## NOTICE

25. Notice of this Motion has been provided by e-mail, facsimile, or overnight delivery to: (a) the Office of the United States Trustee for the Eastern District of Texas; (b) the Debtor's secured lender; (c) the Debtor's 20 largest unsecured creditors; (d) those persons who have formally appeared in this Case and requested service; and (e) all applicable government agencies to the extent required by the Bankruptcy Rules and the Local Rules.

## PRAYER

The Debtor respectfully requests that the Court enter an Order (i) authorizing, but not directing, the Debtor to pay all Employee Obligations; (ii) authorizing the Debtor to pay

prepetition amounts owed for employee benefits and to continue the maintenance of benefit plans; (iii) directing banks and financial institutions to honor prepetition checks for payment of prepetition Employee Obligations and Insurance Premiums, and (iv) granting such other and further relief this Court deems just and equitable.

Dated: January 17, 2017          Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By:   */s/ William R. Greendyke*  ,
    William R. Greendyke (SBT 08390450)
    Julie Goodrich Harrison (SBT 24092434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile: (713) 651-5246
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

AND

Ryan E. Manns (SBT 24041391)
2200 Ross Avenue, Suite 3600
Dallas, Texas 75201-7932
Telephone: (214) 855-8000
Facsimile: (214) 855-8200
ryan.manns@nortonrosefulbright.com

**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

    The undersigned hereby certifies that on this 17th day of January, 2017, a true and correct copy of the foregoing was served in the manner and to the persons set forth in paragraph 25.

        By:   */s/ William R. Greendyke*