IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| IN RE: § § GAINESVILLE HOSPITAL DISTRICT § D/B/A NORTH TEXAS MEDICAL § CENTER,[1] § § § DEBTOR. § § | Case No. 17-40101 Chapter 9 |

**DEBTOR'S LIMITED OBJECTION TO APPLICATION FOR ORDER AUTHORIZING EMPLOYMENT OF MUNSCH HARDT KOPF & HARR, P.C., AS ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS AND APPLICATION TO RETAIN AND EMPLOY SILLS CUMMIS & GROSS P.C. AS ATTORNEYS FOR THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**
[Relates to Dkt Nos. 62, 63]

TO THE HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE:

Gainesville Hospital District d/b/a North Texas Medical Center (the "Debtor"), by and through its undersigned counsel, files this *Limited Objection* (the "Limited Objection") to Application for Order Authorizing Employment of Munsch Hardt Kopf & Harr, P.C., as Attorneys for the Official Committee of Unsecured Creditors [Dkt. No. 62] and Application to Retain and Employ Sills Cummis & Gross P.C. as Attorneys for the Official Committee of Unsecured Creditors [Dkt. No. 63], and in support hereof would respectfully show this Court as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The last four digits of the Debtor's federal tax identification number are: 1664. The location of the Debtor's principal place of business and the service address for the Debtor is: 1900 Hospital Blvd., Gainesville, TX 76240.

**PRELIMINARY STATEMENT**

2.  The Debtor objects in part to the Official Committee of Unsecured Creditors' (the "Committee") Applications to Employ Munsch Hardt Kopf & Harr, P.C. ("Munsch Hardt") and Sills Cummis & Gross P.C. ("Sills") (collectively, the "Applications"), wherein the Committee seeks to retain and employ Munsch Hardt and Sills as its attorneys effective as of February 7, 2017. The Debtor does not object to the employment of Munsch Hardt and Sills as attorneys for the Committee. However, the Debtor does not consent to the payment of fees for the Committee's respective law firms. More specifically, the Debtor opposes the Applications to the extent they seek authorization for payment of attorneys' fees and reimbursement of expenses as administrative expenses under the Bankruptcy Code. If the Committee seeks to employ Munsch Hardt and Sills as its attorneys, the Committee must pay any fees and expenses incurred by them.[2] Therefore, the Debtor files this Limited Objection and requests that the Court deny the Applications to the extent they seek authorization to impose these fees and expenses on the Debtor.

**BACKGROUND**

3.  On January 17, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 9 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Eastern District of Texas (the "Bankruptcy Court"), thereby commencing the above-captioned municipal debt adjustment case (the "Case").

---

[2] Alternatively, the Committee may seek to disband as an official committee and instead form an ad hoc committee whereby the ad hoc committee could seek authorization for payment of its actual and necessary expenses provided that it make a substantial contribution in the Case. *See* 11 U.S.C. § 503(b)(3)(D).

4. On February 1, 2017, the United States Trustee (the "U.S. Trustee") appointed the Committee. On February 2, 2017, the U.S. Trustee filed a First Amended Notice of Appointment of Creditors' Committee.[3]

5. On February 21, 2017, the Committee filed its Applications. In addition to seeking to employ Munsch Hardt and Sills as its attorneys, the Applications request compensation for attorney services on an hourly basis at reduced rates, reimbursement for all out-of-pocket expenses, and treatment of the fees and expenses as administrative expenses pursuant to § 503(b)(2) of the Bankruptcy Code. [Dkt. No. 62, at 6-7; Dkt. No. 63, at 6]. The Applications also propose interim payment of fees to be capped at a combined $35,000 per month, subject to "roll forward" and "roll backward" application, with payment of any allowed professional fees in excess of $35,000 per month deferred until confirmation of a plan of adjustment. [Dkt. No. 62, at 7; Dkt. No. 63, at 6-7].

6. On March 1, 2017, the court entered its Order for Relief.[4]

## RELIEF REQUESTED

7. The Debtor objects to the Applications to the extent they seek compensation for attorney services, reimbursement for expenses, and treatment as administrative expenses under the Bankruptcy Code. Therefore, the Debtor requests that the Application be denied in part.

---

[3] The Committee consists of the following creditors: AmerisourceBergen Drug Corp., Medtronic, Morrison Management Specialists, Inc., NorthStar Anesthesia, P.A., and Voice Products Service, LLC.

[4] Section 1102 states that the U.S. Trustee shall appoint a committee of unsecured creditors "as soon as practicable *after* the order for relief . . . ." 11 U.S.C. § 1102 (emphasis added). Arguably, the U.S. Trustee may not have had the authority to appoint the Committee on February 1st. *See In re City of Detroit*, No. 13-53846, Dkt. No. 2784 (S.D. Mich. Feb. 28, 2014) (vacating the appointment of the official committee of unsecured creditors and finding that the U.S. Trustee did not have the authority to appoint a committee). In the event that the court determines the Debtor must pay the fees and expenses of the Committee's professionals, the Debtor urges the court to limit these fees and expenses to those incurred on or after March 1, 2017.

## ARGUMENTS AND AUTHORITIES

### *The Court Does Not Have the Authority to Order the Debtor to Pay the Fees and Expenses of the Committee's Professionals*

8. Under § 904 of the Bankruptcy Code, "the court may not, by any stay, order, or decree, in the case or otherwise, interfere with (1) any of the political or governmental powers of the debtor; [or] (2) any of the property or revenues of the debtor." 11 U.S.C. § 904. For instance, under § 904, a court cannot enter an order approving or denying a chapter 9 debtor's employment of counsel, *In re E. Shoshone Hosp. Dist.*, 226 B.R. 430, 432 (Bankr. D. Idaho 1998) (noting that § 901(a) does not incorporate § 327), or enter an order requiring the debtor to keep paying for retirees' health benefits, *In re City of Stockton, Cal.*, 478 B.R. 8, 21-22 (Bankr. E.D. Cal. 2012) (holding that § 904(2) prevents the court from interfering with the Debtor's property or revenues). Any order by the Court requiring payment of the Committee's fees and expenses without the Debtor's consent would directly intrude upon the sovereignty of the Debtor, violate the Tenth Amendment to the United States Constitution, and be inconsistent with § 904 of the Bankruptcy Code.[5] *See* 6 COLLIER ON BANKRUPTCY ¶ 901.04 (16th ed. 2016) ("Absent the debtor's consent, there is nothing in chapter 9 that automatically requires a debtor to pay the fees and costs of an official committee, professional employed by the committee, or professionals employed by members of an official committee."); 5 NORTON BANKR. L. & PRAC. 3D § 90:14 ("[T]he court cannot compel the debtor to pay the fees and expenses of professionals employed by official committees."); *see also* Francisco Vazquez, *Examining Chapter 9 Municipal Bankruptcy Cases*, *in* CHAPTER 9 BANKRUPTCY STRATEGIES 173, 192 (Aspatore,

---

[5] Indeed, the first municipal bankruptcy law was stricken down by the Supreme Court as unconstitutionally infringing on states' rights to control their own fiscal affairs. *See Ashton v. Cameron Country Water Improvement Dist. No. 1*, 298 U.S. 513, 529 (1936). The Supreme Court upheld a later municipal bankruptcy law, holding that the amended act was "carefully drawn so as not to impinge upon the sovereignty of the State" and allowed the State to "retain[ ] control of its fiscal affairs." *United States v. Bekins*, 304 U.S. 27, 52 (1938).

2011) ("Given the Constitutional limitations imposed by the Tenth Amendment, a court may not order the payment of administrative expenses.").

9. Section 503(b)(2), cited by the Committee in support of its request that its fees and expenses be treated as administrative claims, does not give the Court authority to grant such a request. Section 503(b)(2) reads: "After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including . . . compensation and reimbursement awarded under section 330(a) of this title." 11 U.S.C. § 503(b)(2). Significantly, § 330 is *not* incorporated into chapter 9 bankruptcy cases. *See* 11 U.S.C. 901. Neither are sections 327, addressing the employment of professional persons, 328, addressing the hiring and compensation of professionals for an official committee, or 331, addressing interim compensation of professionals. *See id.*; *E. Shoshone Hosp. Dist.*, 226 B.R. at 431 ("[I]t is noted that §§ 328, 330, and 331—like § 327—[are] not incorporated in chapter 9 under § 901."). Accordingly, there can be no compensation or reimbursement awarded under § 330 in chapter 9 cases, and, thus, no priority administrative claims under § 503(b)(2). *See In re Cty. of Orange*, 241 B.R. 212, 216 (Bankr. C.D. Cal. 1999) ("Because the statute excludes § 330 from the list of statutes applicable to chapter 9 cases, it does not apply here."); *see also In re N.Y. City Off-Track Betting Corp.*, 434 B.R. 131, 141-42 (Bankr. S.D.N.Y. 2010) (finding that because there is not an estate in a chapter 9 case, "there can be no administrative expenses for 'the actual and necessary costs of preserving the estate' as contemplated by section 503(b)(1)(A) of the Bankruptcy Code.").

10. Section 503(b)(2)'s cross-reference to § 330 does not incorporate § 330 into chapter 9. Only § 901 can perform that function.[6] Rather, § 503(b)(2) merely transforms compensation and reimbursement awarded under § 330 into priority administrative expenses; it does not itself enable or award fees and expenses or provide authority for the payment of fees and expenses. *See In re Romano*, __ B.R. __, No. 2:14-CV-406-TLS, 2016 WL 4920019, at *9 (N.D. Ind. Sept. 14, 2016) (stating that the "express structure created by Congress . . . provides for 'employment under § 327, payment under § 330, and priority under § 503(b)(2).'") (quoting *In re Milwaukee Engraving Co.*, 219 F.3d 635, 636 (7th Cir. 2000)); *see In re Milwaukee Engraving Co.*, 219 F.3d at 636 (explaining that "payment for legal services usually depends on §§ 327 and 330, and that § 503(b)(2) grants administrative priority to 'compensation and reimbursement awarded under section 330(a) of this title.'").

11. As a result, although Chapter 9 contemplates the retention of committee professionals, it does not contemplate oversight by this Court over the payment of the fees of those professionals—whether by the Committee or by the Debtor. *See In re City of Prichard, Ala.*, No. 09-15000, at Dkt. No. 98 (Bankr. S.D. Ala. Mar. 10, 2010) (granting committee's application to employ committee counsel in part but denying application with regarding to compensation for counsel's work and reimbursement for its expenses by the City).

12. The Debtor is aware of authority contrary to its position. Nonetheless, such authority is not binding upon this Court and is inapposite. In *Castle Pines*, the court initially determined that it could not order the debtor to make interim payments to counsel for the

---

[6] In fact, this "cross-reference" argument defies common sense. The Bankruptcy Code is full of cross-references. If every cross-reference was considered an incorporation, nearly the entire Bankruptcy Code would be incorporated by cross-reference into a Chapter 9 case. This would be in direct conflict with Congress's intention to limit the court's jurisdiction and powers over the Debtor and to reserve for the State the power to control its municipalities. *See* 11 U.S.C. §§ 903, 904.

Creditors' Committee, as such order would "interfer[e] with the revenues of the District, at least insofar as it could or would affect its cash flow," in violation of § 904(2). *In re Castle Pines N. Metro. Dist.*, 129 B.R. 233, 233 (Bankr. D. Colo. 1991). The court then considered whether it could order the debtor to make payments at all and turned to the chapter 9 plan confirmation provision, § 943, which requires confirmation of a plan if, among other things, the plan provides for payment of each claim of a kind specified in § 507(a)(1). Essentially, the court traced through § 943 to § 507(a)(1), then to § 503(b), and eventually to § 330(a). The court reasoned that, because § 901(b) incorporates the definitions of terms used in sections made applicable in chapter 9 cases, that the trace back to § 330(a) necessarily meant that § 330(a) is not excluded from chapter 9 cases. The court thus concluded that, in order to have a plan of adjustment confirmed under § 943, a debtor must pay all of its administrative claims, including any fees for the Creditor's Committee counsel under § 330.

13. The *Castle Pines* decision has been widely criticized. The leading treatise on bankruptcy, COLLIER, has cast doubt on the wisdom of the decision, referring to the court's reliance on § 901(b) to incorporate § 330 as "misplaced." *See* 6 COLLIER ON BANKRUPTCY ¶ 901.04 (16th ed. 2016). COLLIER first notes that "[t]he word 'term' used in section 901(b) refers to a word or phrase, not a section of the Bankruptcy Code." *Id.* COLLIER also advances the position that § 943 requires that the plan provide for payment of administrative expenses but "does not provide an independent basis to allow administrative claims," and that § 507(a)(1) "simply provides what claims are allowed as administrative claims" and grants those claims priority status but does not create claims for payment itself. *Id.* The Debtor submits that COLLIER's interpretation is most consistent with the Bankruptcy Code and the chapter 9 framework laid out by Congress.

14. As alluded to above, courts have criticized the decision in *Castle Pines* and refused to follow its holding. *See, e.g.*, *In re Valley Health Sys.*, 381 B.R. 756, 764 n.10 (Bankr. C.D. Cal. 2008) (holding that § 901(a) does not incorporate either § 330 or § 333"); *E. Shoshone Hosp. Dist.*, 226 B.R. at 431 n.2 (describing the decision as "pars[ing] § 901(b) too finely in order to bring § 330 within § 901(a)").

15. Only two cases, *Pauls Valley Hospital Authority* and *Orange County*, have followed *Castle Pines*. In *Pauls Valley*, the court ordered the debtor to pay the reasonable and necessary legal fees and expenses of the Committee allowed under § 503(b) as part of its confirmed plan. *In re Pauls Valley Hosp. Auth.*, No. 13-10791, 2013 Bankr. LEXIS 5510 (Bankr. W.D. Okla. July 18, 2013). The court followed the same method used in *Castle Pines*, using § 943 to trace back to § 330. Accordingly, for the reasons stated above, this holding should be rejected as inconsistent with the framework of chapter 9.[7]

16. The *Orange County* chapter 9 case, which supports the Committee's position, is also distinguishable in a number of respects. First, Orange County negotiated a mechanism whereby it would pay some of the professional fees of the various committees in the case. *See Cty. of Orange*, 179 B.R. at 198 (stating that the County filed the motion for approval of a compensation package for professional retained by the official committee, "which was represented to be a compromise of the opposing positions regarding the County's obligation to pay Committee professionals"). Here, the Debtor does not consent to the payment of the Committee's professionals' fees and does not seek to negotiate such a payment package.

---

[7] It is also worth noting that the Debtor appealed the court's ruling in *Pauls Valley*, but the appeal was dismissed by later stipulation of the parties. The confirmed plan indicates that "the Debtor and the Unsecured Creditors Committee entered into a settlement to resolve the dispute concerning whether the Debtor must pay the attorneys' fees and expenses incurred by the UCC in this Case." *Pauls Valley Hosp. Auth.*, No. 13-10791, at Dkt. No. 312 (Bankr. W.D. Okla. Dec. 11, 2015).

Page **8** of **12**

Second, the plan negotiated in *Orange County* provided for the County's payment of only fifty percent of the fees of certain professionals. *Id.* at 198. This discount demonstrates that Orange County likely desired to pay some of the fees in a good will exchange for value that the committee would provide in the readjustment process. In contrast, as the Debtor has stated throughout this case, the Debtor here intends to pay all of its creditors in full. Accordingly, Committee counsel will not enhance the return to creditors in the Case and will not add value to the plan or confirmation process – especially in light of the projected fees of Committee counsel, which, as discussed in more detail below, makes their involvement cost prohibitive.

17. Finally, the court's statement in *Orange County* that "chapter 9 contemplates, therefore, that committee professionals will be paid at the end of the case rather than during its pendency" cannot be taken out of context. The court was addressing whether interim payments of professionals' fees were appropriate in light of Orange County's consent to pay the fees. In concluding that interim payments were not appropriate, the court noted that the fees (if paid at all) should be paid at the end of the case. This statement cannot be read to impose a requirement upon non-consenting Debtors to pay professionals' fees.

### *The Committee Will Not Provide Value to the Case, and the Debtor and the Taxpayers Should Not Have to Incur the Committee's Costs*

18. Moreover, the Debtor desires and intends to pay all of its creditors in full through its plan of adjustment, and the Debtor has represented as such since the inception of the Case. Under these circumstances, the Committee and its professionals will arguably add very little, if any, value to the Case, especially in light of the projected amount of fees that the Committee has

budgeted – up to $35,000 per month.[8] If the case lasts fifteen to eighteen months, based on its own estimates the projected Committee fees could potentially amount to $525,000 - $630,000. To put these amounts into context, the total amount of unsecured trade debt at the commencement of the case was $3,100,000.[9] [Dkt No. 7 at 4]. In a Case where the Debtor intends to pay all creditors in full, the Committee now proposes to expend 20% of the total amount of unsecured trade debt on professional fees.

19.  The Debtor has further determined that it should not fund any professional fees or costs that might be incurred by the Committee, as such funding would increase costs to the Debtor and, ultimately, to the taxpayers of Cooke County and unnecessarily diverts the Debtor's limited resources, in contravention of Bankruptcy Code § 904. The payment of these fees and expenses has the potential to hinder the Debtor's ability to readjust and imposes a costly and unnecessary burden upon the taxpayers – again, in a Case where the Debtor proposes to pay all creditors in full. Rather than having this burden placed upon the taxpayers, the Debtor encourages the Court to adopt the more equitable approach of requiring the Committee to pay the fees and expenses of its own professionals.

20.  Accordingly, the Debtor objects to the Applications and requests that the court deny the Committee's requests for approval of compensation and reimbursement and treatment of expenses as administrative claims under the Bankruptcy Code.

---

[8] *See In re City of Detroit*, No. 13-53846, Dkt. No. 2784 (S.D. Mich. Feb. 28, 2014) (vacating the U.S. Trustee's appointment of an official committee of unsecured creditors and disbanding the committee after finding that the "Committee would add little value to the case, if any."); *see also* Judith Elkin, *A "Time Out" for Municipalities: The Recent Workings of Chapter 9 of the Bankruptcy Code*, *in* CHAPTER 9 BANKRUPTCY STRATEGIES 133, 139 (Aspatore, 2011) ("While Chapter 9 does not specify that the fees of committee professionals be paid by the debtor, as is required in Chapter 11, this often occurs as a matter of practice since it is far easier to negotiate with a committee with sophisticated counsel than with a large group of unrepresented or multi-represented individuals.").

[9] Indeed, the collective unsecured claims of the Committee members amount to $766,902.30—an amount nearly commensurate with projected fees for Committee counsel.

*The Committee's Request for Payment of Fees and Expenses and Treatment as Administrative Expenses is Premature*

21. In the alternative, and without waiving the foregoing arguments, if the Court ultimately determines that the Debtor is obligated under the law to pay the fees of the Committee's professionals, the Debtor submits that the Committee's request for payment of fees and expenses and treatment as administrative expenses is premature and not ripe for adjudication unless and until a plan of adjustment is confirmed and the Committee submits a fee application. Indeed, the majority of the courts that have considered interim payments of fees and expenses in chapter 9 cases have held that the court may not order the Debtor to pay fees prior to confirmation of the plan of adjustment. *See, e.g.*, *Castle Pines N. Metro. Dist.*, 129 B.R. at 233 ("It is fairly obvious that if the Court ordered the District to make interim payments to counsel for the Creditors' Committee it would be interfering with the revenues of the District, at least insofar as it could or would affect its cash flow."); *Cty. of Orange*, 179 B.R. at 200 ("I hold that Chapter 9 does not empower me to order the County to make interim payments to professionals without the County's consent.").

## **PRAYER**

For the foregoing reasons, the Debtor respectfully requests the Court sustain this Limited Objection, deny the Applications in part, and grant such other and further relief, at law or in equity, to which the Debtor is entitled.

Dated: March 6, 2017  
Dallas, Texas

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By:   */s/ William R. Greendyke*  ,  
    William R. Greendyke (SBT 08390450)  
    Julie Goodrich Harrison (SBT 24092434)  
1301 McKinney Street, Suite 5100  
Houston, Texas 77010-3095  
Telephone: (713) 651-5151  
Facsimile: (713) 651-5246  
william.greendyke@nortonrosefulbright.com  
julie.harrison@nortonrosefulbright.com

AND

Ryan E. Manns (SBT 24041391)  
2200 Ross Avenue, Suite 3600  
Dallas, Texas 75201-7932  
Telephone: (214) 855-8000  
Facsimile: (214) 855-8200  
ryan.manns@nortonrosefulbright.com

**COUNSEL FOR THE DEBTOR AND DEBTOR-IN-POSSESSION**

## CERTIFICATE OF SERVICE

    The undersigned attorney hereby certifies that a true and correct copy of the foregoing Limited Objection was served upon the counsel and parties of record, electronically through the Bankruptcy Court's Electronic Case Filing System on those parties that have consented to such service.

                                            */s/ William R. Greendyke*