1            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE EASTERN DISTRICT OF TEXAS
2                     SHERMAN DIVISION

3

4   IN RE:                    )   BK. NO:  17-40101-BTR

5                             )

6   GAINESVILLE HOSPITAL       )

7   DISTRICT                   )

8        D E B T O R.          )

9

10

11              *  *  *  *  *  *  *  *  *  *

12              TRANSCRIPT OF PROCEEDINGS

13              *  *  *  *  *  *  *  *  *  *

14

15

16

17

18

19

20        BE IT REMEMBERED, that on the 28th day of March, 2017,

21   before the HONORABLE BRENDA T. RHOADES, United States

22   Bankruptcy Judge at Plano, Texas, the above styled and

23   numbered cause came on for hearing, and the following

24   constitutes the transcript of such proceedings as hereinafter

25   set forth:

1                   P R O C E E D I N G S

2                   COURTROOM DEPUTY:  Page 5, number 22,

3    Gainesville Hospital District.  Case 17-40101.  Two

4    applications to employ.

5                   THE COURT:  Okay.  Appearances.

6                   MR. GREENDYKE:  Good afternoon, Judge.  Bill

7    Greendyke, Julie Harrison, and I'd like to introduce my

8    litigation partner Shea Haass from Norton, Rose, Fulbright on

9    behalf of the debtor.

10                  THE COURT:  Okay.  Can you spell your name for

11   me, sir.

12                  MR. HAASS:  Yes, ma'am.  First name is Shea,

13   S-h-e-a, last name is Haass, H-a-a-s-s.

14                  THE COURT:  Okay.  Two s's.  I would have

15   gotten that wrong.

16                  MR. LIPPMAN:  Good afternoon, Your Honor.

17   Kevin Lippman and my colleague Joseph Wielebinski here with

18   Munsch, Hardt, Kopf & Harr, proposed counsel for the

19   Committee.

20                  THE COURT:  Okay.  We have lots of experience

21   spelling Wielebinski, so I don't need you to spell that one

22   for me today.

23                  MR. SHERMAN:  Good afternoon, Your Honor.

24   Andrew Sherman with the law firm of Sills, Cummis & Gross.

25   We've been admitted pro hac vice, Your Honor.

1                    MS. KLEIN:  Good afternoon, Your Honor.  Buffy

2  Klein with Hush Blackwell on behalf of UHS (indecipherable

3  word).

4                    MR. GREENDYKE:  And, Judge, this is Bill

5  Greendyke again.  I think the Texas AG is on the phone.  I

6  think you may have already heard that.

7                    THE COURT:  Do we have telephonic appearances?

8                    MR. ROY:  Yes.  Good afternoon, Your Honor.

9  This is Casey Roy with the Texas Attorney General's Office.

10 I also have with me my colleague Chris Dvorak, D-v-o-r-a-k,

11 with our office's public finance division.

12                   THE COURT:  All right.  Any other appearance?

13                   MR. BUTLER:  Yes, Your Honor.  Lynn Butler on

14 behalf of UHS on the phone.

15                   THE COURT:  Okay.  Now, is Mr. Hal Morris also

16 going to appear?

17                   MR. ROY:  No, Your Honor.  Mr. Morris is not

18 going to be appearing.  I was scheduled to be traveling to

19 another hearing at this time, but that matter settled, so I'm

20 appearing on behalf of the AG.

21                   THE COURT:  Okay.  I just wanted to make sure

22 we weren't expecting another appearance.

23                   MR. ROY:  Sure.  Thank you, Your Honor.

24                   THE COURT:  So your application -- do we need

25 to take up the motion to strike the issue of calling

1    Mr. Greendyke?

2                    MR. LIPPMAN:  Your Honor, I believe we have a

3    resolution of that.

4                    THE COURT:  We do, good.

5                    MR. LIPPMAN:  Just try to make things a little

6    more simpler for the Court.

7                    THE COURT:  Okay.

8                    MR. LIPPMAN:  The parties have agreed that we

9    will not be calling as witnesses either Mr. Greendyke or

10   Mr. Mann.  In exchange, the debtor has agreed to the

11   admissibility of Committee Exhibits 3 to 6 for this hearing.

12                   THE COURT:  Okay.

13                   MR. LIPPMAN:  And I have a copy of our exhibit

14   binder, if the Court would like me to tender it.

15                   THE COURT:  Yeah.  I don't have those

16   exhibits.  So if you'll approach with the documents.

17       All right.  Just so you all know, I don't usually bring

18   my phone into the courtroom, but I keep my code on here and

19   it has links so it's faster for me.  So that's why I have it

20   here with me, okay.

21       All right.  So Exhibits 1 through 6, you said, are

22   being admitted by agreement?

23                   MR. LIPPMAN:  The agreement is specific as to

24   Exhibits 3 through 6, Your Honor.  Exhibits 1, 2, 7, and 8 we

25   can address in due course, unless counsel wants to --

1                    THE COURT:  Okay.  So Exhibits 3 through 6

2    will be admitted by agreement of the parties.

3                    MR. LIPPMAN:  That's correct.

4                    THE COURT:  All right.  Any other preliminary

5    announcements to make, housekeeping?

6                    MR. LIPPMAN:  The first two exhibits, Your

7    Honor, by the way, I guess we can address as a housekeeping

8    matter, are pleadings filed of record.  Exhibit Number 1 is

9    the petition and Exhibit Number 2 is the declaration filed in

10   support of the Chapter 9 filing and the first day motions.

11   We believe that's stuff the Court could take judicial notice

12   of.  And we would ask for the admission of those two

13   documents.

14                    MR. GREENDYKE:  We have no objection to the

15   admission of 1 and 2.

16                    THE COURT:  All right.  Exhibits 1 and 2 are

17   admitted.

18                    MR. LIPPMAN:  And with respect of 7 and 8,

19   those are communications between the parties.  It may be best

20   left as we come to them in our presentation.  We may or may

21   not ask the Court to admit them into the record.  But we can

22   address those in due course.

23                    THE COURT:  All right.  You may proceed.

24                    MR. LIPPMAN:  Thank you, Your Honor.  Again,

25   Kevin Lippman here on behalf of the law firm of Munsch Hardt

1    Kopf & Harr.

2         If it's okay with the Court, my recommendation is that

3    we take up the two applications together, because the

4    objections are applicable to both.  And by way of just sort

5    of procedural background, the application seeking authorizing

6    to employ Munsch, Hardt, Kopf & Harr is at docket number 62.

7    And then the application to retain and employ Sills, Cummis &

8    Gross, PC as attorneys of the Official Committee of Unsecured

9    Creditors is at docket number 63.  Docket number 64 is the

10   certificate of service of the application.  We have limited

11   objection that was filed to it and that was by the debtor at

12   docket number 85.  Then, in addition, the Texas Attorney

13   General's Office filed a limited objection, basically more of

14   a joinder to the debtor's objection at docket number 87.  And

15   then yesterday UHS of Delaware filed a joinder to the

16   debtor's objection, as well, and that's at docket number 95.

17        Your Honor, with respect to the two applications.  As

18   we understand the objection, there is no objection to the

19   qualification or specifically to the retention of either firm

20   by the Committee.  Just for the Court to be aware with

21   respect to the two law firms, Sills, Cummis & Gross has very

22   extensive knowledge in Chapter 9s, as well as health care

23   restructurings.  Munsch Hardt, admittedly, doesn't have much

24   Chapter 9 experience, but we do have health care experience,

25   as well as familiarity with the Court and are local.  And

1   it's the reason for the two firms.

2        With respect to the two asserted objections, as we

3   understand it, The first is that the Court lacks authority to

4   require the debtor pay the fees and expenses of the

5   Committee's professionals.  And then secondly, assuming it

6   does have the authority, the alternative objection is the

7   Court should apply an equitable approach to require the

8   members of the Committee to pay the fees and expenses of its

9   own professionals.

10       If it's satisfactory to the Court, I'll address the

11   first objection and Mr. Sherman will be addressing the

12   equitable second objection.

13       As to the authority to pay, Your Honor.  We believe

14   that a standard provision in just about every order approving

15   the employment of an estate professional includes a statement

16   that the fees and expenses of the professional would be

17   subject to Section 330 of the Bankruptcy Court, as well as

18   any applicable local rules.  This is an important issue in

19   this case.  Because unlike your typical case, we're getting

20   hit up front that the debtor should not be required -- the

21   Court doesn't have the ability to order the debtor to pay

22   such fees.

23            THE COURT:  Okay.  Isn't 330 specifically

24   excluded from the applicable section to a Chapter 9 case?

25            MR. LIPPMAN:  Your Honor, 330 is not in the

1  list under 901 of the statutory provisions.  But that doesn't

2  mean it's specifically excluded.

3              THE COURT:  Okay.  What does it mean?  How do

4  we apply 330, if it's not included in the list of statutes

5  that apply?

6              MR. LIPPMAN:  Your Honor, what it requires is

7  a reading of the statute holistically.

8              THE COURT:  Okay.

9              MR. LIPPMAN:  And you get there by starting

10 off with Section 901, as the Court is already referencing,

11 which incorporates into that provision specifically sections

12 503, 507(a)(2), 1102, and 1103.

13             THE COURT:  Okay.

14             MR. LIPPMAN:  And as the Court is aware, 1102

15 is the section which authorizes the United States Trustee to

16 appoint a Committee in the case.  So the UST has the

17 authority to put a Committee at the Chapter 9 case.  1103 is

18 the provision which sets forth the powers and the duties of

19 the Committee, which specifically includes the power to

20 employ counsel.

21     Now, if you jump to Section 943(b)(5) of the Bankruptcy

22 Code, that governs confirmation of the debtor's plan of

23 adjustment.  And it provides the mechanism by which

24 professionals are paid in a Chapter 9 bankruptcy case.

25 Specifically, 943(b)(5) states that on the effective date of

1    the plan, each holder of a claim of a kind specified in

2    Section507(a)(2) of this title, will receive on account of

3    such claim cash equal to the allowed amount of such claim.

4    If you follow that to 507(a)(2), that is a provision that

5    states that administrative expenses allowed under

6    Section503(b) of the title shall have the second level of

7    priority, when it comes to distribution.  When you follow it

8    to 503(b), it provides that there shall be allowed

9    administrative expenses, including the compensation and

10   reimbursements ordered under Section 330(a) of the title.  It

11   is that symmetry, Your Honor, that completes the inclusion of

12   Section 330 into Chapter 9.

13        This is not a unique issue.  It has been addressed by

14   three published opinions by Bankruptcy Courts.  And those

15   opinions, each of the Court conclude that it had the

16   authority to require, as part of a plan of adjustment, the

17   payment of the Committee's professional fees.  Those cases

18   are cited in our omnibus response to the objection.  And they

19   are In re Castle Pines, North Metropolitan District.  It's a

20   Bankruptcy Court out of the District of Colorado, 1991.  The

21   second one is the County of Orange.  It's a Bankruptcy Court

22   decision out of the Central District of California, 1995.

23   And the last, and it's the most recent Court to address the

24   issue, is In re Paul's Valley Hospital Authority, Bankruptcy

25   Court Western District of Oklahoma, 2013.

1          And if the Court would like, I do have copies of the

2    three opinions I can tender up.

3                    THE COURT:  I think I have them.  Thank you.

4                    MR. LIPPMAN:  All right.  Thank you, Your

5    Honor.

6          Additionally, Your Honor, one of the issues that has

7    been raised by the debtor is does such a requirement of

8    paying the Committee's professionals somehow violate the 10th

9    Amendment of the United States Constitution.  Each of those

10   cases did address that issue.  And they analyzed the

11   applicable statutes included that the Bankruptcy Court does

12   have the authority to require payment of the Committee's

13   professional fees in Chapter 9.  The debtor in this case, as

14   in those other cases, voluntarily sought the jurisdiction of

15   this Court, because it could not obtain something that it can

16   obtain elsewhere.  Specifically, the ability to impair

17   contracts.  That right does not exist outside of bankruptcy

18   court.

19         In fact, the debtor has already filed in this case its

20   first omnibus motion to authorize and to reject certain

21   contracts.  And that's at docket number 89.  As noted in

22   Castle Pines and in the County of Orange, as well as Paul's

23   Valley, in fact, if the debtor is going to invoke the power

24   of this court, it must pay the price of admission, which

25   includes, in part, paying the reasonable fees and expenses of

1   the Committee's professionals.  If the debtor doesn't want to

2   pay these administrative expenses, it does have a remedy

3   available to it.  It can simply dismiss the case at any time.

4   As noted in Castle Pines, counsel understood the hierarchy it

5   created.

6       In Rawlins versus California Men's Colony, which is a

7   United States Supreme Court case at 506 US 1994, the Supreme

8   Court stated that Courts, when viewing the acts of Congress,

9   must avoid a statutory construction that leads to observe

10  results.  Here, Your Honor, we would state that the debtor's

11  statutory argument would do just that.

12      As noted by the 5th Circuit in In re Advisory Committee

13  a Major Funding Corp, located at 109 F.2d 219, 1997, the

14  function of the Committee is to act as a watch dog on behalf

15  of the larger body of creditors which it represents.  In

16  order to fulfill its overriding duty of protecting the

17  creditors' interest, the Committee is obligated to employ the

18  powers granted to it under Section 1103, which includes the

19  power to retain counsel.  By seeking to deny the ability of

20  the Committee's professionals to be paid under Section 330,

21  the debtors are trying to marginalize, if not eliminate, the

22  Committee in this case.

23      Your Honor, we would assert that this is a legal issue,

24  which is now ripe for determination.  First, counsel for the

25  Committee needs to know if they have even the legal ability

1   to be paid under Section 330, which normally is not disputed

2   at the time of retention of Committee counsel.  The debtor

3   teed up this legal issue in connection with this objection to

4   the retention application.  How the Court addresses the

5   issue, quite frankly, will impact whether or not counsel goes

6   forward with this representation and how involved the

7   Committee can and will be in this case.

8        Secondly, we believe this is an answer the debtor needs

9   to know.  In order for the debtor to confirm its plan of

10  adjustment, it must pay all allowed administrative claims in

11  full on the plan's effective date.  The debtor will not be

12  able to do that, unless it knows at the time its formulating

13  its plan, what those administrative claims are.  The amount

14  of the Committee's professional fees is obviously something

15  the debtor will need to know in connection with the

16  formulation of its plan.

17       With that, Your Honor, we'll turn to the equitable

18  argument, which the debtor has presented to this Court.

19            MR. SHERMAN:  Good afternoon, Your Honor.  For

20  the record, Andrews Sherman, Sills Cummis firm.

21       Your Honor, I think, as Mr. Lippman outlined, I'm not

22  even sure you need to get to the equitable aspect of this

23  decision, because it's purely a legal conclusion as you

24  relate to the symmetry as it gets through 943.  And I think,

25  Your Honor, just so that it's clear, just to modify or to

1   build on something Mr. Lippman said, we're not saying to the

2   Court that we're asking for an order compelling payment

3   outside of a plan of adjustment.  I think, Your Honor, what

4   we're saying is that the fees and expenses to be accrued

5   shall be paid pursuant to a plan of adjustment such that

6   we're not going to ask the Court --

7               THE COURT:  I thought you were asking for

8   interim fees?  Are you limiting your request for fees only

9   to --

10              MR. SHERMAN:  Correct, Your Honor.  I think

11  that's probably the better view of where things are going,

12  Your Honor.  And I don't want to be so bold to say that

13  throughout the pendency of the case, consistent with 903 and

14  904, that the Committee can obligate the debtor to pay

15  outside a plan of adjustment.  As Mr. Lippman said, the three

16  cases where they land and where they case law really is and

17  where Congress said it was, just to be consistent with the

18  10th Amendment.

19      So, Your Honor, to be clear as far as how we're going

20  to get paid, the fees and expenses are to be accrued.  But I

21  think the -- we wouldn't be so bold, Your Honor, to ask Your

22  Honor to go outside the existing case law.  So if that clears

23  it up, Your Honor, I'd just like to make the record clear as

24  far as that aspect.

25      So within that legal construct, Your Honor, as Mr.

1    Lippman outlined, there's no equitable aspect to sort of move

2    the playing field of whether Committee counsel should --

3    Committee should be entitled to employ counsel.  It's

4    statutory.  It's 1102 and 1103 are baked into 901.  And

5    obviously, as Mr. Lippman said, to avoid the absurdity of

6    having those provisions in there.  But I don't want to

7    duplicate what he said.  I want to sort of get to more of the

8    equitable and the need in this case.  But I don't want to

9    compromise or to lend credence to the fact that there's some

10   type of equitable angle where a Court will have discretion.

11   We believe straight statutory interpretation doesn't allow

12   even equities to get in the middle of it.  So with that

13   disclaimer, Your Honor, in many respects, this case cries out

14   for a Committee.

15        As we heard from the debtor in its statements to this

16   Court that it intends to pay 100 cents.  And that's great.

17   And we embrace that on behalf of the creditors.  And have

18   done everything that we can in our short tenure in this case

19   to work with the debtor to achieve that result.

20   Unfortunately to date our efforts have been rebuked.  But

21   despite such rebuke, Your Honor, we've continued to do our

22   work and our diligence.  And our work and our diligence to

23   date has uncovered a few things.  One is, we uncovered a

24   number of issues relating to the DIP financing which we were

25   in a unique position to speak on behalf of the creditors to

1   get those provisions worked through.  And that happened on a

2   consensual basis and the Court approved such DIP financing.

3        The other thing, Your Honor, as we were doing our

4   diligence is we uncovered an apparent conflict of interest

5   that obviously wouldn't come through if you didn't have

6   Committee counsel in this case.  And we disclosed, or we

7   uncovered, however you want to put it, the relationship

8   between the Norton Rose firm and UHS.  And we brought that to

9   the Court's attention, as we believe it's our statutory duty

10  to advise the Court in that watch dog capacity.  Sort of

11  consistent with the 5th Circuit major funding type of

12  obligations.

13       THE COURT:  Okay.  Given that 327, 328, 329,

14  330 don't apply in a Chapter 9 case, at least not -- you may

15  have an argument with 330 that the other three provisions --

16       MR. SHERMAN:  Correct, Your Honor.  The Texas

17  Rules of Responsibility do.

18       THE COURT:  Okay.  Okay.  So the issue that

19  you're raising is one of Texas has the (inaudible word)

20  rules, not of disinterestedness.

21       MR. SHERMAN:  Correct, Your Honor.  Again, I

22  started, Your Honor, with my presentation.  I didn't want to

23  be so bold to say that we're going to override or impute 903

24  and 904.  And I will be consistent, Your Honor, and I will

25  not ask the Court to engraft 327, 328, 329, 101.31, I

1   believe, the disinterestedness section into the requirements.

2                    THE COURT:  Okay.

3                    MR. SHERMAN:  So it's simply, Your Honor, if

4   we're going to go down the road of looking at equities, we're

5   going to look at, who's looking out for the creditors?  And

6   what we heard from the debtor's perspective, Your Honor is,

7   you don't have to look out for the creditors, because we're

8   going to pay 100 cents.  And unfortunately, as Your Honor has

9   probably seen more than I, the best of intentions in this

10  courtroom do not always -- are not always achieved.

11       There are going to be a number of instances, just in

12  the nature of a bankruptcy case, which may take the debtor

13  off course a little bit.  Hopefully they get to the 100

14  cents.  But, for example, Your Honor, if there's a big

15  Medicare or Medicaid recoupment or set off.  Which if this

16  comes in and no fault of anybody, but it just impairs the

17  cash flow, what happens?  The DIP financing is then off

18  kilter.  And then who's looking out for the creditors in that

19  respect?  Take an example, Your Honor, where a competitor

20  comes in and says they want to pay 90 cents to creditors

21  today to take control of the Hospital District.  Now, the

22  debtor may not be able to take that call.  They  have a

23  management agreement.  And, again, the terms are not

24  disclosed to this Court.  And we've been provided on

25  (indecipherable two words) basis that I'm not going to

1  disclose any terms to this Court.  But what happens to the

2  Norton Rose lawyers that have that dual allegiance to the

3  manager and to the debtor.  And who's looking out for the

4  creditors?  Because maybe it's better for the creditors in

5  that instance to take 90 cents and go home and get done.

6  Rather than go down the road of working through a plan of

7  adjustment which will pay 100 cents, but maybe 18 months

8  later.  What happens if there's a default in the management

9  agreement?  What if there's a default under the DIP

10 financing?  What happens if you have a very large rejection

11 damage claim?  The debtor, as Mr. Lippman said, has already

12 exercised a right under 365.  Well, what happens if you go

13 down the road of a rejection damage claim and it's 10 million

14 bucks, but the debtor didn't understand it was $10 million.

15 You're only going to get to that rejection damage claim

16 through 502.  It went through the rejection process.  And

17 that's going to then say, Wait a minute.  Instead of that

18 great 100 cent case, it may be an 80 cent case.  It may be a

19 70 cent case.  We don't know where it's going to come out.

20 Who is looking out for the creditors as we go down this road?

21      So it's just not something that at the beginning of the

22 case you can say, Well, no, you creditors, you don't need

23 representation.  Creditor's Committee's, by their nature Your

24 Honor, were put in by Congress for a reason.  To look out for

25 the interest of creditors.  The debtor gets a lawyer.  UHS

1  has a lawyer.  Apparently the AG is now involved in the case.

2  They have counsel.  It would be really strange to progress

3  with this case, Your Honor, with all these various --

4            THE COURT:  Okay.  I though this issue wasn't

5  about whether you could have counsel, because the AG has

6  counsel, but this estate is not paying for it.

7            MR. SHERMAN:  Perfect --

8            THE COURT:  The issue is, who pays for it?

9            MR. SHERMAN:  But, Your Honor, the two go hand

10  in hand.  And you can almost use the Prichard case as an

11  example.  If counsel is not entitled to be paid, most law

12  firms, I haven't discussed it with my own firm and with the

13  Munsch firm of whether we're going to work pro bono, because

14  effectively that's what you're saying.  Not you personally,

15  Your Honor.  That would be the affect of a decision where

16  there's no payment would be, who's paying the bill for whose

17  benefit?  It's really for all creditors, Your Honor.

18       So just take the example that I've given, whether it's

19  the conflict we've identified, the DIP financing.  That

20  benefit is inured to the creditors in general.  But no

21  individual creditor should bear that expense.  As the Castle

22  Pines' decision said, Your Honor, it's the price of admission

23  to Chapter 9.  It's simply a risk and a burden that goes with

24  the process of Chapter 9.  So, again, I don't think it's

25  discretionary, Your Honor.  I think, like Congress putting in

1   1102 and 1103, it's there.  So it's -- but the affect of it,

2   Your Honor, let's just play the string out in the City of

3   Pritchard, it was raised by the debtor.  What happened in

4   that case, Your Honor, is the Alabama Bankruptcy Court said

5   no to the Committee for reimbursement.  They first went to

6   the District Court to appeal.  And the District Court said,

7   Well, it's interlocutory, so I'm not going to give you a

8   decision.  So what did counsel do?  They folded tent, Your

9   Honor.  They disbanded.  Nobody looked out for the creditors.

10  That's a bad result.  In that instance, Your Honor, the

11  creditors lost, because the bankruptcy judge said, We're not

12  going to follow what Congress said.  You've effectively

13  disenfranchised and taken counsel away from a significant

14  constituency.  And in this constituency, Your Honor, we're

15  not talking about $3 million, as the debtor says.  It's $30

16  million.  What happens if the bonds go -- if there's an issue

17  with the bonds?  They're ultimately insured by Amback.  But

18  if the debtor has a payment default because of Medicare

19  setoff, a Medicare recoupment, it impairs their cash flow.

20  Then Amback comes in here.  And lo and behold, Your Honor,

21  Amback is going to have their own lawyer.  So, again, each

22  constituent party will have counsel and an ability of being

23  paid.

24       I think it would be sort of antithetical to Congress'

25  interest to say we're going to mandate under 1102 and 1103

and a Committee can be there and then honor the 5th Circuit's

teachings in major funding.  And then ultimately take payment

away.  The concepts work hand in hand.

As far as -- I guess the last point on equities, Your

Honor, is our approach to this case, sort as we approach most

hospital cases, has been to approach the debtor in good faith

to try to work together to get to 100 cent plan, if that's

the goal in this case, as I said in the inception.  It's not

the goal to rack up legal fees in an effort to do anything

but, you know, inure to the benefits of the specific law

firms.  We've been doing it too long.  We've been doing it in

too many hospital cases with these similar creditors.  So

this is something where we're simply looking out for the

interest of our constituency.

So, Your Honor, it is not nefarious in any respect.

We're simply honoring Congressional intent.

THE COURT:  Thank you.

Okay, Mr. Greendyke.

MR. GREENDYKE:  Thank you, Judge.  May it

please the Court.  On behalf of the debtor.

Judge, I know the Court has read the pleadings and

understands the law and obviously has been asking some very

pertinent questions of counsel.  I start from the top.  We

begin with Section 904 of the Code and Section 901 of the

Code.  904, as we've discussed before in prior hearings,

1   states the Court may not by any stay order, or to create in a

2   case, or otherwise interfere with the (indecipherable word)

3   or governmental powers of the debtor, or any property or

4   revenues of the debtor.  In my mind, in Cowboy English that

5   basically means, we get to run our business the way we want

6   to run our business.  The question that we've alluded to and

7   focused on in our pleadings with regard to this application

8   and the limited objection to the application, I think my

9   colleague's counsel for UHS and colleagues counsel for the

10  Texas AG all focus on this promise of this case is for 100

11  cents on the dollar.  And what are these folks going to do to

12  benefit, you know, that progress?  Could something go wrong

13  as Mr. Sherman says?  Yes.  Something could go wrong.  And at

14  that instance, maybe they would have an opportunity to show

15  some benefit.  But the idea of having somebody involved as a

16  part of our budget, as a part of our end-game budget under

17  943, if you will, if that's the law, I think is something

18  that my client is just not convinced is appropriate, or fair,

19  or something under the circumstances of this case, the really

20  kind of short-stream budget that we have in the game plan is

21  something that we need to underwrite and we need to take on

22  and sign a blank check for.  And that's the primary purpose

23  of the objection.

24            THE COURT:  Okay.  Can I -- I want to clarify

25  your position, if I may.

1          First, as I understand it, you object to any payment

2    ever to the Committee; is that correct, Committee counsel?

3                    MR. GREENDYKE:  Yes, Judge.

4                    THE COURT:  Okay.  And then your alternative

5    is --

6                    MR. GREENDYKE:  As he mentioned -- and,

7    frankly, it's the first time I heard this position was today

8    on the record where they said, you know, we'll not worry

9    about interim payments.  We'll just look to the end game.

10                   THE COURT:  Right.  943, right?

11                   MR. GREENDYKE:  Correct.

12                   THE COURT:  So is it your position that -- and

13   that's your back-up position if the Court concludes they're

14   entitled to payment, they're only entitled to payment --

15                   MR. GREENDYKE:  Yes, Judge.

16                   THE COURT:  -- under 943?

17                   MR. GREENDYKE:  Yes, Judge.

18                   THE COURT:  Not on an interim basis?

19                   MR. GREENDYKE:  I still think that 904 trumps

20   everything.  And I still think that the argument --

21                   THE COURT:  It even trumps 943?

22                   MR. GREENDYKE:  To the extent that those fees

23   are incurred and charged, yes.  I don't know --

24                   THE COURT:  Okay.  Can I ever confirm a plan

25   under those circumstances?  I guess I'm trying to -- if 943,

1   if the Court concludes that 943 requires a payment of

2   Committee expenses, because it requires a payment of

3   expenses, that may affect your budget, the Court can't ever

4   confirm a plan unless you consent?

5                   MR. GREENDYKE:  Or unless we make an agreement

6   with them.

7                   THE COURT:  Right.

8                   MR. GREENDYKE:  Obviously we're going to do

9   what the Court tells us to do, Judge, in this regard.  But I

10  think running our business is something the Court cannot

11  interfere with, again, using the Cowboy English for 904.

12                  THE COURT:  You're in the Eastern District.

13  We take Cowboy English, thank you very much.

14                  MR. GREENDYKE:  I disagree with the symmetry

15  argument.  And I disagree with the implication argument.  I

16  think it's pretty clear to look at what is incorporated under

17  the Code, under 901.  So when the Court said 327 is not

18  there, 328 is not there, 329, 330, 331, they're all gone --

19                  THE COURT:  Okay.  Here's my question to you.

20                  MR. GREENDYKE:  Okay.

21                  THE COURT:  901 does incorporate 1102 --

22                  MR. GREENDYKE:  And 1103.

23                  THE COURT:  -- and 1103, right?

24                  MR. GREENDYKE:  Yes, Your Honor.

25                  THE COURT:  1102 requires that appointment of

1  a Committee, doesn't it?

2              MR. GREENDYKE:  Well --

3              THE COURT:  It says, shall.

4              MR. GREENDYKE:  -- it does.  It does require.

5  And we were not asked if we thought that was a good idea by

6  the US Trustee.  He appointed --

7              THE COURT:  Well, Congress didn't ask us at

8  all.  It just says, US Trustee shall.

9              MR. GREENDYKE:  Interestingly, the Trustee

10 appointed the Committee 30 days before the entry of the order

11 for relief.  Because 1102 specifically says you can't do it

12 until you have the entry of an order for relief, just as sort

13 of a side bar comment.

14             THE COURT:  Okay.

15             MR. GREENDYKE:  But, yes, 1102 is there and

16 1103 is there.  I don't dispute that.

17             THE COURT:  Okay.  So here's my question to

18 you.  503 does not have an exhaustive list of administrative

19 priorities.  It has an inclusive list, right?  It says, All

20 expenses that are actual and necessary to the preservation of

21 the estate, including and it lists some stuff, right?

22             MR. GREENDYKE:  There's no estate.

23             THE COURT:  Huh?

24             MR. GREENDYKE:  There's no estate.

25             THE COURT:  There's no what?

1          MR. GREENDYKE:  Estate.  In a Chapter 9 case,

2    there's no estate.  If you look at 901, there's no 541.

3          THE COURT:  Okay.  So there's no actual,

4    necessary cost and expense of preserving the estate, because

5    there is no estate at all?

6          MR. GREENDYKE:  That's the law.  That's the

7    law.  And I know the implication or symmetry argument is

8    going to get me to a different place.  But there is no estate

9    in Chapter 9, because it's all governmental property.

10         THE COURT:  Okay.  So notwithstanding the

11   fact -- so your argument is, the Court should read 503 to

12   prohibit the Court from authorizing, not just authorizing,

13   but that the debtor is not obligated to pay the fees for the

14   Committee, notwithstanding the fact that by filing the

15   bankruptcy case, the debtor has triggered the application of

16   1102 and 1103, which requires the formation of a Committee?

17         MR. GREENDYKE:  I think that's correct, Judge.

18   That's our argument.  I think -- and I know it's a difficult

19   decision and it's completely different than anything you

20   would see in a Chapter 11 case.  But in this instance, like

21   we said in our objection, our limited objection, I don't

22   really have an objection to somebody at some point for an Ad

23   Hoc Committee or otherwise showing me -- arguing to the Court

24   what a substantial contribution is, or how they benefited

25   things.  But, frankly, uncovering every stone and having a

1  blank check to do whatever they want to do as a Committee,

2  like you would see in many Chapter 11 cases is I don't think

3  what we need from public policy, from the statutory

4  standpoint.  I mean, everybody else in the case who has

5  appeared on this in any kind of significant way has said,

6  Whoa, don't do this.  It's going to be costly.

7            THE COURT:  Are any of those anybody else

8  general unsecured creditors?

9            MR. GREENDYKE:  No.

10      Judge, I think it's interesting.  And I'm not trying to

11  ignore your questions.  But it's interesting that the Chapter

12  9 has been around since the late '80s and there's only been

13  about 250 cases.  And there's just a handful of cases that

14  touch on this issue.  And, frankly, most of them have been

15  settled, not appealed.  We don't have any Circuit authority

16  on this.  I think it's -- the Court's being confronted with a

17  really kind of a bedrock issue that needs to be addressed at

18  some point.

19            THE COURT:  Okay.  So, so far I've got the

20  argument that 330 is not incorporated under 901.  Is there

21  any other argument that I'm missing from you all on why --

22            MR. GREENDYKE:  No.  331 is not incorporated

23  either.  And that would be interim compensation, even though

24  that, too, alludes to 1103.  Again, I see the symmetry.  I

25  see the circular arguments and all.  I keep going back to

1   square 1, which is 901 and then 904, square 2.

2        And, Judge, I wanted to leave myself if the Court has

3   any questions about the potential conflict question that's

4   been raised.  I know I came prepared to discuss that.

5              THE COURT:  Okay.  I am not concerned about

6   that at this point in time.

7              MR. GREENDYKE:  Thank you.

8              THE COURT:  I think if someone wishes to file

9   a disqualification motion, if they believe one is warranted,

10  we'll take that up in that context.  But since nothing has

11  been filed and I did clarify and I wanted to clarify the

12  Texas Ethical Rules versus the Bankruptcy disinterestedness

13  test, and I think that at least the proposed counsel has

14  clarified that.  And if it's just -- I don't mean to say,

15  just, but if it's limited to the Texas Ethical Rules, then

16  they need to file their motion and we'll take it up if and

17  when we need to.  I'm quite familiar with the plethora of

18  cases.  In fact, have participated as counsel in a plethora

19  of cases where there are multiple disclosures on

20  disinterestedness on --

21             MR. GREENDYKE:  And that's not necessary here.

22  As the Court's obviously stated, from a Texas Ethical

23  standpoint, you know, that seems to be an attorney/client

24  matter.  And I can represent to the Court now that our client

25  is totally fine with all this.  All that's been taken care

1   of.

2         Judge, we have a number of counsel that are working for

3   the Hospital District.  We have the Reed, Claymon, Meeker &

4   Hargett firm in Austin who is health care counsel dealing

5   directly with UHS.  We have a public finance advisor at

6   Hilltop Securities in Dallas.  We have the McCall, Parkers &

7   Horton firm in Dallas that's doing municipal bond work along

8   with some of the Norton Rose people.  None of those folks

9   have filed applications.  None of those folks have made any

10  disclosures.  The client is aware of all of the relationships

11  back and forth and is fine with that.  And I was going to say

12  to you, if you need anything further from the client, let us

13  know.

14              THE COURT:  Right.  I think it's an issue of

15  disclosure.  And the ethical rules, I think, even if these

16  are the facts, as alleged, it becomes an issue of disclosure

17  to your client, not to the estate.  And so I --

18              MR. GREENDYKE:  We agree.

19              THE COURT:  -- I'm aware of that.  And so

20  that's why I'm saying that if there's a disqualification

21  motion because there's a problem that the Court's not aware

22  of, file it and we'll hear it.  But I'm not going to do it in

23  the context of some sort of response to a reply to a response

24  of something else.

25              MR. GREENDYKE:  Understood.

1                    THE COURT:  We're not taking it up in that

2      context.

3                    MR. GREENDYKE:   Thank you.

4                    THE COURT:  All right.  I have been wringing

5      my hands over this decision on this issue.  And I think that

6      there are certainly plausible, colorable arguments on both

7      sides.  But I think given that 1102 and 1103 are applicable

8      in Chapter 9 cases, given that 1102 requires the appointment

9      of a Committee, I think the better reading -- I think there

10     was an argument about holistic reading of Section 503 and 901

11     making 507 and therefore 503 applicable.  A better reading of

12     the statute is that -- or the statutes together is that the

13     Committee counsel fees may be payable in a Chapter 9 case,

14     but only upon confirmation -- as a condition to confirmation

15     under 943.  No interim payments is the way I read it.

16         So given that there's no objection to the Retention

17     Committee, I'm going to authorize the retention of the

18     Committee's counsel.  And no payments on an interim basis.

19     If there are further arguments about plan confirmation

20     payments in that context, we'll take it up then.  But there

21     will be no interim distributions.  Okay?

22                    MR. GREENDYKE:  Understood, Judge.  Thank you.

23                    THE COURT:  All right.

24                    MR. LIPPMAN:  Just to clarify, Your Honor.

25     When we get to the plan of adjustments, when you talk about

1    the analysis, you're talking about under 330 for the

2    Committee's professionals at that point, standard review?

3                    THE COURT:  Well, those are part of the issues

4    that you all will have to argue.  I think there's arguments

5    about whether reasonable standard under 330 applies.  I'm not

6    sure if it makes a hill of beans of difference.  I always

7    kind of wondered that.  Because under our ethical rules,

8    well, lawyers, as lawyers, you're obligated not to charge

9    unreasonable fees, I think.  I think that's one of the rules.

10   I think it's still a case.  So I've never understood that

11   there's a difference.  But we will take up the issue of the

12   obligation to pay on a final basis at that time.  But right

13   now, I'm not authorizing the payments on an interim basis.

14                   MR. GREENDYKE:  We understand.

15        Judge, if the Court has a few minutes and counsel has a

16   few minutes, I'd like to bring you up to speed on something

17   that will probably happen within the next few days.

18                   THE COURT:  Yes, sir.

19                   MR. GREENDYKE:  Just so you're not surprised

20   by it.  We have been advised by our public finance counsel

21   that when the management agreement that's been alluded to in

22   some of these pleadings, was entered into by the debtor and

23   UHS a couple of days after we filed the Chapter 9, at some

24   point they became aware that it triggered an IRS provision --

25   and I'm not a tax lawyer -- that renders within 90 days the

1    tax free bonds that are -- or, you know, the tax free

2    municipal bonds that are outstanding in the name of the

3    debtor pre-petition to become taxable.  And that, apparently,

4    is something that, you know, happens with enough frequency

5    that they know how to deal with it.  But there will be a

6    renewed issuance of bonds on a taxable basis, basically to

7    pay off the tax free bonds.  And I hope I'm saying this the

8    right way.  But what you're going to see is, soon, a filing

9    of a stipulation between UHS and the AG's Office and the

10   debtor enabling this process to occur under Texas State Law.

11   And we've been talking with the bond counsel about it, we've

12   been talking with the AG about it.  They've expected me to

13   say this.  Obviously UHS is aware of it.  We just didn't want

14   you to be surprised by, Gee, what's this, because you will

15   never have seen anything like this, probably, before.  And

16   hopefully will never see it again.  But it is a work out to

17   make sure that there's no harm done to those pre-petition

18   creditors.  It's just a change of character of the bond.  And

19   we'll explain that to you, if you want to have a hearing to

20   discuss it, if you don't understand what we file with you.

21   Just wanted to give you a heads up you're going to see an

22   unordinary pleading get filed.

23        The key is, we would like to get it addressed and

24   hopefully entered by the Court, because it's going to be an

25   agreed stipulation by the parties promptly, very promptly,

1    because we need to get things done by the middle to end of

2    April.

3                    THE COURT:  Okay.  So is this something that's

4    going to require notice?

5                    MR. GREENDYKE:  You know, again, I don't think

6    so.  It's not a DIP loan.  We're not having a new lender or

7    anything like that.  I think it is a stipulation between the

8    parties that would enable us to do what we'd be entitled to

9    do under 904.

10                   THE COURT:  Okay.  And the Court would have to

11   bless it in some way, you're saying?

12                   MR. GREENDYKE:  Well, I think the parties

13   would feel more comfortable with the character of the new

14   bond if the Court entered the stipulation, as opposed to was

15   just aware of it as a notice.

16                   THE COURT:  Okay.

17                   MR. GREENDYKE:  But like I say, we can do

18   whatever you want.

19                   THE COURT:  I would prefer that we at least

20   set -- schedule a hearing on that.

21                   MR. GREENDYKE:  Sure.

22                   THE COURT:  So that if I have questions, I can

23   ask questions.

24                   MR. GREENDYKE:  Absolutely.  Absolutely.

25                   THE COURT:  If the Court is going to bless

1   something, I think we need something -- due process requires

2   something more than just the Court unilaterally signing

3   something because you filed it, right?  So what I would like

4   you to do after we adjourn is for you all to get with

5   Ms. Rasco and look at sort of the calendar of dates so that

6   she can give you ahead of time a date and time that fits

7   within the time line that you all need.

8                    MR. GREENDYKE:  Right.

9                    THE COURT:  And then when you file the motion,

10  you can notice it out at the same time.

11                   MR. GREENDYKE:  Great.  Great.  Can we do that

12  telephonically?  I'm not sure whether we have precise dates

13  for all of the calendars that are necessary to --

14                   THE COURT:  You can.

15                   MR. GREENDYKE:  Or by email.

16                   THE COURT:  The easier way to do it for

17  Ms. Rasco, and I'm sure she's turning around really quickly,

18  which is do it by email.

19                   MR. GREENDYKE:  Deal.  Deal.  Thank you.

20                   THE COURT:  So if you can give her kind of an

21  email with some of the possible dates or the range of dates

22  that you need the hearing by --

23                   MR. GREENDYKE:  Will do.

24                   THE COURT:  -- and then she can look for a

25  time.

1                 MR. GREENDYKE:  Great.  Thank you, Judge.

2                 THE COURT:  All right.  Is there anything

3     further?

4          All right.  Thank you.  Parties are excused and we

5     stand adjourned.

6                     (End of Proceedings.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                C E R T I F I C A T E

2           I, CINDY SUMNER, do hereby certify that the

3   foregoing constitutes a full, true, and complete

4   transcription of the proceedings as heretofore set forth in

5   the above-captioned and numbered cause in typewriting before

6   me.

7

8

9

10

11

12

13

14                              /s/Cindy Sumner

15                              _____

16                              CINDY SUMNER, CSR #5832
                                Expires 12-31-17
17                              Cindy Sumner, CSR
                                5001 Vineyard Lane
18                              McKinney, Texas 75070
                                214 802-7196
19

20

21

22

23

24

25