B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Ex Parte<br><br>Gainesville Hospital District d/b/a North Texas Medical Center | DEFENDANTS<br>Honorable Ken Paxton, Attorney General of the State of Texas |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>William R. Greendyke<br><br>Norton Rose Fulbright US LLP, 1301 McKinney, Suite 5100<br><br>Houston, TX  77010-3095 | ATTORNEYS (If Known)<br><br>Office of the Attorney General of the State of Texas<br><br>300 W. 15th Street, Austin, TX  78711 |
| PARTY (Check One Box Only)<br>☒ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☐ Trustee | PARTY (Check One Box Only)<br>☐ Debtor        ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Bond validation action in the form of an adversary proceeding seeking an expedited declaratory judgment pursuant to Chapter 1205 of the Texas Government Code and Federal Rule of Bankruptcy Procedure 7001(7).

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

(continued next column)

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☒ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |

Other Relief Sought

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR   Gainesville Hospital District<br>d/b/a North Texas Medical Center | BANKRUPTCY CASE NO.<br>17-40101 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Eastern | DIVISION OFFICE<br>Sherman | NAME OF JUDGE<br>Rhoades |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br><br>July 28, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Ryan E. Manns | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GAINESVILLE HOSPITAL DISTRICT | § | Case No. 17-40101 |
| D/B/A NORTH TEXAS MEDICAL | § | |
| CENTER,[1] | § | |
| | § | Chapter 9 |
| DEBTOR. | § | |

EX PARTE                                                    ADVERSARY NO. _____

GAINESVILLE HOSPITAL DISTRICT
D/B/A NORTH TEXAS MEDICAL
CENTER

### ORIGINAL COMPLAINT/PETITION FOR EXPEDITED DECLARATORY JUDGMENT[2]

Debtor, Gainesville Hospital District d/b/a North Texas Medical Center (the "District"),[3] in accordance with the Order entered by this Court on January 19, 2017, files this bond validation action in the form of an adversary proceeding (the "Petition"), seeking an expedited declaratory judgment pursuant to Chapter 1205 of the Texas Government Code ("Chapter 1205") and Federal Rule of Bankruptcy Procedure 7001(7), to conclusively establish, among other things: (a) the District's authority to issue its limited tax general obligation refunding bonds, from time to time in one or more series as may be necessary (the "Bonds"), pursuant to Chapter 1207 of the Texas Government Code ("Chapter 1207") to restructure and refinance each of the District's general or special obligations established herein without an election in connection with

---

[1] The last four digits of the District's federal tax identification number are: 1664.  The location of the District's principal place of business and the service address is:  1900 Hospital Blvd., Gainesville, TX 76240.
[2] This bond validation action, which is being filed pursuant to Chapter 1205 of the Texas Government Code, is referred to therein as a "petition," and such term will be used herein.
[3] The District was created pursuant to Chapter 211, 64th Legislature, 1975, now codified as Chapter 1077 Texas Special District Local Laws Code, as amended (collectively, the "Enabling Legislation").

the issuance thereof; (b) the District's authority to levy ad valorem taxes in an amount not to exceed 75 cents on the $100 valuation of all taxable property within the physical boundaries of the District, in order to provide indigent medical care to residents within the District and to repay the Bonds (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the bonds of the District, including the Bonds, in any given year); (c) the District's authority to incur post-petition indebtedness (the "DIP Loan") with UHS of Delaware, Inc. (the "DIP Lender") and certain other liabilities and obligations described herein, in order to operate and maintain the North Texas Medical Center (the "Hospital") and provide indigent care prior to and during this bankruptcy proceeding; (d) the validity and legality of the District's liabilities for the payment of certain obligations associated with the operation and maintenance of the Hospital and the provision of indigent care by the District; (e) the classification of each such liability and each such related obligation, in not-to-exceed amounts provided herein, as "other general or special obligations" of the District eligible to be refunded by the Bonds pursuant to Chapter 1207 without an election; and (f) the validity and legality of the proposed orders, elections, judgments, agreements, certificates and contracts described herein, including the statutory authority of the District to adopt, execute or enter into such orders, elections, judgments, agreements, certificates and contracts, all of which relate to the issuance of the Bonds and the expenditure of Bond proceeds for the payment in full of the District's general or special obligations described herein for the continued operation and maintenance of the Hospital and the provision of indigent care by the District.

*Chapter 1205 requires the Court, upon receipt of this Petition, to "immediately issue an order" setting the matter for trial "at 10:00 a.m. on the first Monday after the 20th day after the date of the order."[4]*

## I.
## INTRODUCTION AND NATURE OF THE ACTION

### Introduction

1.      The District is a rural hospital district created in 1975 as a political subdivision of the State of Texas.  The District operates the Hospital in Gainesville, Cooke County, Texas, which currently staffs 48 beds and provides all normally associated essential inpatient and outpatient services, including laboratory, medical imaging, cardiology, orthopedics, intensive care, operating rooms, emergency medical services, rehabilitation, radiology, obstetrics and gynecology, a swing-bed program and outpatient clinic services.  The Hospital is also a designated Trauma 4 facility offering 24-hour emergency services.  The Hospital serves as the primary care and acute care center for residents of approximately two-thirds of Cooke County, which comprises the majority of the county's population, including the communities of Gainesville, Lake Kiowa, Valley View, Era, Callisburg, Lindsay, Sivells Bend and Walnut Bend,

---

[4] Specifically, Tex. Gov't Code § 1205.041 provides:
    (a) The court in which an action under this chapter is brought shall, on receipt of the petition, immediately issue an order, in the form of a notice, directed to all persons who:
        (1)  reside in the territory of the issuer;
        (2)  own property located within the boundaries of the issuer;
        (3)  are taxpayers of the issuer; or
        (4)  have or claim a right, title, or interest in any property or money to be affected by a public security authorization or the issuance of the public securities.
    (b) The order must, in general terms and without naming them, advise the persons described by Subsection (a) and the attorney general of their right to:
        (1)  appear for a trial at 10 a.m. on the first Monday after the 20th day after the order; and
        (2)  show cause why the petition should not be granted and the public securities or the public security authorization validated and confirmed.
    (c) The order must give a general description of the petition, but it is not required to contain the entire petition or any exhibit attached to the petition.

Texas.[5] Moreover, the Hospital is the only acute care hospital in the District's service area providing service to the District's indigent population.  All residents within the District's service area depend upon the Hospital for basic acute and long-term healthcare needs and, but for the existence of the Hospital, would have to drive over 30 miles to access another hospital in either Denton or Denison, Texas with equivalent services.

2.       Although the District has always been committed to providing, within its service area and through the Hospital, the highest possible level of patient care for the residents, the District has recently encountered serious financial difficulties that have resulted in the District's seeking relief under Chapter 9 of the Bankruptcy Code (the "Chapter 9 Proceeding") to adjust, restructure and refinance its outstanding obligations and liabilities so that it may continue to provide such services as it is constitutionally and statutorily required to do.

3.       For several months leading up to the filing of the Chapter 9 Proceeding, the District explored options to restructure and refinance its obligations in an attempt to avoid closing the Hospital.  The District has determined that its only viable option is to lease the Hospital to the DIP Lender or its affiliate (the "Operator") in order to resolve its financial difficulties and for the Hospital to remain in operation.  To that end, the District has begun negotiations with the Operator, to assume responsibility for the long-term operations of the Hospital under the terms of the Lease.  The District's consummation of the Lease and the uninterrupted operation of the Hospital is conditioned on the District's payment in full of certain of its past due expenses and liabilities, as described herein.

---

[5] The western one-third of Cooke County is served by the Muenster Hospital District's Muenster Memorial Hospital.

## Nature of This Adversary Proceeding

4.      Chapter 1205 affords issuers of public securities, such as the District, with an efficient procedure for confirming the validity of public securities and their associated contracts and obligations.  An action under Chapter 1205 simultaneously provides a single forum for timely addressing and adjudicating any concerns that could conceivably be raised by the Attorney General of Texas ("Attorney General") or any Interested Parties (defined below). Specifically, Section 1205.021 of Chapter 1205 provides, in pertinent part, that an issuer of public securities may:

> "[B]ring an action under this chapter to obtain a declaratory judgment as to:
>
> (1)      the authority of the issuer to issue the public securities;
>
> (2)      the legality and validity of each public security authorization relating to the public securities, including if appropriate:
>
>> (a)      the election at which the public securities were authorized;
>>
>> (b)      the organization or boundaries of the issuer;
>>
>> (c)      the imposition of an assessment, a tax, or a tax lien;
>>
>> (d)      the execution or proposed execution of a contract;
>>
>> (e)      the imposition of a rate, fee, charge, or toll or the enforcement of a remedy relating to the imposition of that rate, fee, charge, or toll; and
>>
>> (f)      the pledge or encumbrance of a tax, revenue, receipts, or property to secure the public securities;
>
> (3)      the legality and validity of each expenditure or proposed expenditure of money relating to the public securities; and
>
> (4)      the legality and validity of the public securities."

The Supreme Court of Texas recognizes that the legislature intended for courts to quickly resolve any proceedings brought under Chapter 1205.[6]

5.      The District brings this expedited declaratory judgment action as an adversary proceeding in its Chapter 9 Proceeding so that it can proceed with confidence and certainty in the restructuring and refinancing of its general and special obligations in accordance with Chapter 1207, assured by an order of this Court that its actions taken to restructure and refinance such obligations are valid and incontestable; that the District has the authority to issue and deliver the Bonds in accordance with the applicable District orders and any supplements thereto, substantially in the forms attached hereto; and that such Bonds are, upon approval of the Attorney General, incontestable and are valid and enforceable under the laws of the State of Texas. The District also seeks a declaration by this Court that the levy of an ad valorem tax by the District as described herein to repay the Bonds and to provide for indigent care is legal and incontestable.

## II.
## PARTIES, JURISDICTION AND VENUE

6.      The District commenced the Chapter 9 Proceeding on January 17, 2017.  The Court has subject matter jurisdiction of this matter pursuant to 28 U.S.C. §§ 1334 and 157. The statutory predicates for the relief requested herein are sections 105, 364, 503, 506, and 901 of the Bankruptcy Code and Rule 7001 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

---

[6] *See Buckholts Indep. Sch. Dist. v. Glaser,* 632 S.W.2d 146, 150-51 (Tex. 1982); *see also Rio Grande Valley Sugar Growers, Inc. v. Attorney General,* 670 S.W.2d 399, 401 (Tex. App.-Austin 1984, writ ref'd n.r.e.) ("The total thrust of [article 717m-1, predecessor statute to Chapter 1205] is to dispose of public securities validation litigation with dispatch.").

7.     Reference to the Court of this adversary proceeding is proper pursuant to 28 U.S.C. §157(a). This is a core proceeding as contemplated by 28 U.S.C. § 157(b)(2)(A), (B), (D), (K), and (0).  Venue is proper in the Eastern District of Texas because the District is organized, and therefore domiciled, in the Eastern District of Texas.

8.     This Court's jurisdiction to render the declaratory judgment sought by the District herein is established by Chapter 1205, which sets forth a procedure by which an issuer[7] of public securities[8] may obtain a declaratory judgment regarding the validity of public securities and related transactions.[9]

**Parties**

9.     The District is a Texas rural hospital district organized and existing pursuant to Section 9, Article IX of the Constitution of the State of Texas and its Enabling Legislation.  Chapter 1205 sets forth a procedure pursuant to which a court may enter a declaratory judgment with respect to the authority of an issuer to issue public securities.[10]  The District is an "issuer" of "public securities" within the meaning of §1205.001(1) because it is a political subdivision of the State of Texas, and the Bonds it intends to issue and deliver are "public securities" as defined by §1205.001(2).  The District is therefore authorized to bring this adversary proceeding pursuant to Chapter 1205.

---

[7] Tex. Gov't Code § 1205.001(1) (defining "Issuer" as "an agency, authority, board, body politic, commission, department, district, instrumentality, municipality or other political subdivision, or public corporation of this state. The term includes a . . . hospital district . . . and any other kind or type of political and governmental entity.")

[8] Tex. Gov't Code §1205.001(2) (defining "Public security" as any "interest-bearing obligation, including a bond, bond anticipation note, certificate, note, warrant, or other evidence of indebtedness, regardless of whether the obligation is:

(A) general or special;
(B) negotiable;
(C) in bearer or registered form;
(D) in temporary or permanent form;
(E) issued with interest coupons; or
(F) to be repaid from taxes, revenue, both taxes and revenue, or in another manner.")

[9] Tex. Gov't Code § 1205.021.

[10] *Id.*

10.     This Chapter 1205 action is, by statute, an *in rem* proceeding and also a class action.[11]   All persons who reside within the service area of the District; who own property located within the boundaries of the District; who are taxpayers of the District; or who have or claim a right, title, or interest in any property or money to be affected by the authorization or the issuance of the public securities at issue, including creditors in the captioned bankruptcy proceeding, (collectively, the "Interested Parties") are therefore parties to this action and any judgment rendered in this action is binding upon all such Interested Parties.  Any Interested Party may become a named party to this action by filing an answer to this Petition on or before the time set for trial, or thereafter by intervention with leave of court.[12]

11.     Defendant Attorney General Ken Paxton is named and served herein pursuant to Section 1205.042 of Chapter 1205.

12.     Defendants in this adversary proceeding thus include all Interested Parties, as well as the Honorable Ken Paxton, in his official capacity as Attorney General of the State of Texas (collectively, "Defendants").

13.     Section 1205.041 provides that the clerk of the court shall give notice of this action by publication to all Interested Parties as set forth in paragraph 14 below.[13]   In accordance with §1205.042, the only party that must be personally served is the Attorney General of Texas, who may be served with a copy of this Petition (together with attached exhibits), and a copy of the Court's Order Setting Hearing at the Office of the Attorney General of Texas, 300 W. 15th Street, Austin, Texas  78711.

---

[11] Tex. Gov't Code Ann. §1205.023.
[12] *Id.* at §1205.062.
[13] As previously discussed with the Court, Norton Rose Fulbright US LLP will act in the stead of the clerk to publish such notice.

**Personal Jurisdiction**

14.     Jurisdiction over the Interested Parties may be had through publication of notice as provided by Sections 1205.041 and 1205.043-.044 of Chapter 1205. Specifically, Section 1205.041 of Chapter 1205 requires that, upon receipt of this Petition, the clerk of the court where this Petition is filed issue an order, in the form of a notice, advising the Defendants of their right to appear for trial at 10:00 a.m. on the first Monday after the 20th day after the date of the order and show cause why this Petition should not be granted.[14] Section 1205.043 of Chapter 1205 further directs that the clerk shall give notice by publishing a substantial copy of the Order in a newspaper of general circulation in Travis County, Texas, and in a newspaper of general circulation in the county, where each issuer has its principal office. The notice shall be published once a week for two (2) consecutive calendar weeks, with the first publication not less than fourteen (14) days prior to the date set for trial.[15] In such manner, all Defendants to this lawsuit, with the exception of the Attorney General, shall thereby be made parties to these proceedings and the Court shall have jurisdiction over them to the same extent as if individually named as defendants in this Petition and personally served with process in this cause.[16]

**Venue**

15.     The Chapter 9 Proceeding is pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division. Venue is proper in the Eastern District of Texas because the District is organized and maintains its principal office in Cooke County, Texas, which is located in the Eastern District of Texas. *See Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 101 (Bankr. S.D. Tex. 2009) ("[T]he venue of the

---

[14]   A true and correct copy of the form of notice to be published pursuant to §1205.041 is attached hereto as Exhibit 1.
[15] *Id*. at § 1205.043.
[16] *Id*. at § 1205.044.

bankruptcy petition is presumed to be the proper venue for any adversary proceeding involving the debtor.")

16.     Under 28 U.S.C. § 1409(a), "venue of an adversary proceeding is presumed proper in the district where the debtor filed its bankruptcy case ..." *Manchester Inc. v. Lyle* (*In re Manchester, Inc.*), 2009 WL 1533614, at *4 (Bankr.N.D.Tex. June 1, 2009) (citing *In re Conmaco/Rector, L.P.,* 348 B.R. 362, 367 (Bankr.E.D.La.2005)). Based, in part, on § 1409(a) and its predecessor, § 1473, courts have held that there is a "home court presumption" favoring transfer of adversary proceedings to the court adjudicating the bankruptcy case.").

## III.
## FACTUAL BACKGROUND

### The District's Creation and Enabling Legislation

17.     The District was created and established pursuant to article IX, section 9, of the Texas Constitution and the Enabling Legislation.  At an election held in the District on August 23, 1975, the majority of voters (1) approved the creation of the District "with the authority to levy annual ad valorem taxes at a rate not to exceed 75 cents on the $100 valuation of all taxable property within the District for the purpose of meeting the requirements of the District's bonds (including those assumed) and for the care of indigents," and (2) authorized the issuance of bonds in the principal amount of $4,955,000, and "to levy annually a tax to create an interest and sinking fund sufficient to pay the interest on and principal of said bonds, as the same becomes due and mature, provided such taxes levied for paying the interest on and creating a sinking fund for bonds (including those assumed) of the District shall not exceed 65 cents on each $100

valuation of taxable property in any one year."[17]   Since its creation, the District has levied an annual tax as authorized by law and by the voters within the District who approved its creation.

18.     Pursuant to the Enabling Legislation, the District has, since its creation, operated all hospital facilities within the District and provided medical and hospital care to the indigent persons in the District.[18]

**The District's Operation of the Hospital**

19.     The Hospital is the only acute care hospital in the District's service area,[19] which represents approximately two-thirds of the geographic area of Cooke County (except for the western one-third of Cooke County, which is within the Muenster Hospital District) and includes the communities of Gainesville, Lake Kiowa, Valley View, Era, Callisburg, Lindsay, Sivells Bend and Walnut Bend, Texas.   The Hospital is situated on 52 acres inside the city limits of Gainesville, Texas, which is located in North Texas, approximately 60 miles north of the Dallas-Fort Worth metroplex, and five miles south of the Texas-Oklahoma border.   The Hospital is licensed for 60 beds and has approximately 267 employees, and it is also a designated Trauma 4 facility offering 24-hour emergency services, as well as outpatient services, rehabilitation services, a swing-bed program, and clinic services.

**The District's Liabilities and Financial Difficulties**

20.     Over the days and weeks prior to the District's filing of the Chapter 9 Proceeding, a number of creditors and vendors placed the Hospital in a cash-on-delivery status, and the

---

[17] *See* Exhibit 2, a true and correct copy of the resolution dated July 22, 1975 calling for an election to confirm the creation of the District, and Exhibit 3, a true and correct copy of the August 26, 1975 minutes of the District's board meeting which includes the order canvassing returns and declaring the results of the election in which the District's creation was approved by the voters within the District.

[18] *See* Special District Local Law Code, Section 1077.101.

[19] *See* map of the District's service area attached as Exhibit 4.   In addition to patients within the District's service area, the Hospital also treats patients from eastern Montague County, western Grayson County, northern Denton County, Texas and southern Love County, Oklahoma.

District was generally not paying its debts as they become due because it did not have the financial ability to do so.  Indeed, the District was insolvent.  Prior to the bankruptcy filing, the District owed unsecured trade debts in the amount of approximately $3,829,310.44 (the "Prepetition Obligations"), and as of the date hereof, such Prepetition Obligations remain outstanding and unpaid.[20]

21.    The District also has ongoing liabilities related to its employees.  Specifically, the District employs 267 individuals, of whom 21 work on an annual salary basis and 246 on an hourly basis, and the District also has five independent contractors who assist with the Hospital's day-to-day operations (collectively, the "Employees").  The District pays all of its Employees on a bi-weekly basis. In the ordinary course of its business, the District also provides its Employees with certain benefits, including medical, dental and vision insurance, flexible spending accounts, basic and voluntary life and accidental death and dismemberment insurance, a 401(k) retirement savings plan (no match), and paid leave benefits.  The District also sponsors several special Employee-funded programs, including a short- and long-term disability benefits program, a supplemental accident/cancer insurance policy, a pre-paid legal services program, and a supplemental general life insurance policy.  The District offers vacation to its Employees based upon the length of service and prior experience.  The District allows Employees to "cash out" unused paid time off on any pay date at 75% of its accrued value calculated at the base rate in effect at the time of the cash out. In the Chapter 9 Proceeding, the District seeks to pay its Employees for work performed prepetition, to honor the aforementioned prepetition employee-related obligations and benefits (collectively, the "Employee Obligations"), which include severance and termination obligations, applicable payroll taxes and prepetition amounts payable

---

[20] A true and correct copy of the list of Prepetition Obligations that remain outstanding and unpaid as of the date hereof is attached hereto as Exhibit 5.

to Hospital physicians, and to continue paying its Employee Obligations in the ordinary course of the District's business during the Chapter 9 Proceeding.

22.     The estimated total amount of prepetition Employee Obligations was approximately $625,000.[21]

23.     In the ordinary course of operating the Hospital, the District also regularly incurs utility expenses for water, electricity, natural gas, telephone service, waste management and other services.  Approximately six utility providers provide these services to the District.

24.     It was the District's inability to stay current in its payment of the liabilities described herein that led it to voluntarily initiate the Chapter 9 Proceeding.

**The Chapter 9 Proceeding and the DIP Loan**

25.     Following the District's filing of the Chapter 9 Proceeding, on January 17, 2017, the Court issued an Interim Order Granting Approval of Agreement for Postpetition Secured Credit and Scheduling Final Hearing (the "Interim DIP Order")[22] and on February 15, 2017, the Court issued a Final Order Granting Approval of Agreement for Postpetition Secured Credit and Scheduling Final Hearing (the "Final DIP Order")[23].   In the Final DIP Order, the Court authorized and directed the District to incur the DIP Loan[24] from the DIP Lender in the maximum amount of $3,200,000, which principal amount is equal to 75% of the sum of (a) the District's accounts receivable that are less than 91 days old at the date of determination and (b) the District's tax revenue due from Cooke County, Texas that is available for hospital operations as of the date of determination.  The District is authorized to use the DIP Loan to (i) fund its operations, until the Operator leases the Hospital, in a manner consistent with the initial

---

[21] See terms of the DIP Loan summarized in the "The Chapter 9 Proceeding and the DIP Loan," paragraph 25 herein.
[22] A true and correct copy of the Interim DIP Order is attached hereto as Exhibit 6.
[23] A true and correct copy of the Final DIP Order is attached hereto as Exhibit 7.
[24] A true and correct copy of the DIP Loan is attached hereto as Exhibit 8.

estimated budget attached as an exhibit to the Final DIP Order[25] and subsequent budgets as agreed between the District and the DIP Lender; and (ii) pay fees and expenses related to the DIP Loan and the District's bankruptcy case (collectively, the "Budgeted Expenses").  Budgeted Expenses to be funded by the DIP Loan are to be approved by the DIP Lender at the DIP Lender's discretion.  The DIP Loan matures by its own terms on February 1, 2018 (the "DIP Loan Maturity Date").  The Budgeted Expenses include but are not limited to salaries, employee benefits, supplies, contracted services, payments to physicians, legal and professional services, maintenance and repair costs, telephone and utilities expenses, rental expenses, insurance, education and training, travel expenses, and other operating expenses.  As of approximately January 17, 2017, the unpaid Budgeted Expenses that the District was obligated to pay included (a) approximately $2,700,000 in past due bills from medical supply vendors; (b) approximately $500,000 in unpaid professional fees related to its provision of medical care; (c) an anticipated amount of approximately $700,000 in professional fees and transaction costs in connection with the Chapter 9 Proceeding; (d) approximately $1,425,000 for the payment of payroll, payroll tax, vendor costs and working capital expenses that were due and payable in early January 2017; and (e) operating losses, if any, incurred prior to the commencement of the Lease.

26.    The amount owed under the DIP Loan, plus interest thereon, the associated costs and fees related to the implementation of the DIP Loan under the Chapter 9 Proceeding, and issuance costs of the Bonds refunding the DIP Loan are collectively referred to herein as the "DIP Loan Liability."

---

[25] *Id.* at Exhibit 7.

**The District's Subsequent DIP Indebtedness and Prepetition and Unpaid Postpetition Obligations**

27. The District may also incur additional Court-approved debtor-in-possession indebtedness, which would be substantially in the form of the existing DIP Loan, with maturities of no more than one year to (1) pay Budgeted Expenses not paid with proceeds of the DIP Loan and/or (2) repay the DIP Loan at the DIP Loan Maturity Date if the District has not successfully exited the Chapter 9 Proceeding. Such additional Court-approved indebtedness, plus interest thereon, the associated costs and fees related to the implementation of such indebtedness under the Chapter 9 Proceeding, and issuance costs of the Bonds refunding such indebtedness are collectively referred to herein as "Subsequent DIP Indebtedness."

28. The District is also obligated to pay other Budgeted Expenses, Prepetition Obligations, Employee Obligations, and all other unpaid postpetition obligations, including (1) costs of the District related to (i) the Chapter 9 Proceeding, (ii) the validation suit proceedings, and (iii) the District's affiliation with the DIP Lender and/or its affiliates relating to the long-term lease of the District's hospital facilities and (2) any unpaid issuance costs of Bonds refunding other Obligations (defined herein), that are not paid by either the DIP Loan or Subsequent DIP Indebtedness. Such obligations, the associated costs and fees related to such obligations under the Chapter 9 Proceeding, and issuance costs of the Bonds refunding such obligations are collectively referred to herein as "Prepetition and Unpaid Postpetition Obligations."

## The District's Pension Liability

29.    In addition to the DIP Loan Liability, the Subsequent DIP Indebtedness and the Prepetition and Unpaid Postpetition Obligations described above, the District operates a defined benefit pension plan for current and retired employees administered by the Texas Hospital Association.    The documents constituting the District's pension plan are attached hereto as Exhibit 9 (collectively, the "Pension Plan").    The Pension Plan is currently not fully funded.    As a requirement for the Operator to agree to lease the Hospital from the District and to purchase certain of the District's assets under an asset purchase agreement ("APA"), the District will be required by the Operator prior to commencement of the Lease to fund its legally determined unfunded pension liability, but the District will have limited revenues from which to do so.    In the Actuarial Valuation, as of April 1, 2017, completed by Rudd and Wisdom, Inc. (the "Actuaries"), and as updated by the Actuaries in a June 14, 2017 letter to the District (collectively, the "Actuarial Valuation"),[26] the unfunded accrued pension liability of the District, should all the plan participants select to be funded by annuities (rather than the less costly lump sum option), was calculated to be $16,100,000 as of June 30, 2017. Such calculated unfunded pension liability, the associated costs and fees related to such unfunded pension liability under the Chapter 9 Proceeding, and issuance costs of the Bonds refunding such unfunded pension liability are collectively referred to herein as the "Pension Liability."

## The District's Medicare and OIG Obligations

30.    The District has filed a self-disclosure with the Office of Inspector General, Department of Health and Human Services (the "OIG") reporting that, due to an administrative error within its electronic medical record management software, certain claims for which it

---

[26] A true and correct copy of the Actuarial Valuation is attached hereto as Exhibit 10.

received approximately $1,117,000 in Medicare funds may not meet all reimbursement requirements.  Qualified medical services were provided, but due to the electronic record reporting error, the District may be required to reimburse the Medicare funds. The District is working to resolve the issue with the OIG. If the OIG determines the District's electronic record error created an overpayment, the District  may be required to pay an amount of up to three times the amount of the overpayment, as well as potential per-claim penalty fees, or approximately $3,351,000.  Such amounts that could be owed, the associated costs and fees related to such owed amounts under the Chapter 9 Proceeding, and issuance costs of the Bonds refunding such owed amounts are collectively referred to herein as the "Medicare Obligation."  While the District believes and has asserted that no reimbursement is due, Medicare rules provide that any liability for a reporting error of this nature would be a liability of the District; therefore, the District will be required to assume and satisfy the Medicare Obligation, prior to the commencement of the Lease.

31.    The District also received a Request for Information or Assistance, dated September 22, 2016, from the OIG, requesting documents related to payments made to a particular physician for services performed within the District's facilities.  On March 1, 2017, the District received a supplemental Request for Information or Assistance from the OIG, clarifying the request to include documents and communications in possession of the District related to physician payments made by third parties.  The District has undertaken a detailed review of physician payment arrangements that could be the subject of inquiry. As a result of this more comprehensive compliance audit, the District will likely request approval from the OIG to self-disclose any arrangements that could arguably create a violation of federal law. If the District is approved to enter the self-disclosure protocol, liability could be limited; however, if the OIG

refuses to grant such treatment, the OIG could impose penalties (similar to the Medicare Obligation) of a multiple of federal payer funds received by the District and / or per-claim penalties. Discussions between the District and the OIG are ongoing, and the District is cooperating fully with OIG's requests and has begun providing documents in response to these requests. The District estimates that the liability associated with this investigation could be in an amount not to exceed $5,000,000. Such amounts that could be owed, the associated costs and fees related to such owed amounts under the Chapter 9 Proceeding, and issuance costs of the Bonds refunding such owed amounts are collectively referred to herein as the "OIG Obligation."

## Management Services Agreement and Lease of the Hospital

32.     Effective January 20, 2017, the District entered into the Management Services Agreement, as amended by Amendment to Management Services Agreement, effective May 3, 2017 (collectively, the "Management Agreement"), with McAllen Medical Center Physicians, Inc., a Texas nonprofit corporation (and an affiliate of the Operator) to manage, operate and supervise the Hospital and assist the District in providing medical and hospital care for the District's needy inhabitants in a manner consistent with the District's constitutional and statutory responsibilities.[27]   The Management Agreement is structured as a temporary measure to allow uninterrupted operation of the Hospital until the Lease can commence and the APA can be consummated.

## The Bonds

33.     The District proposes to issue its limited tax general obligation refunding bonds from time to time, in one or more series as may be necessary – *i.e.*, the Bonds - to restructure and

---

[27] A true and correct copy of the Management Agreement and Amendment to Management Services Agreement are attached hereto as Exhibit 11.

refinance the District's outstanding financial obligations and liabilities described above.  To the extent that the District has estimated "not to exceed" amounts for any of the classes of its financial obligations and liabilities described above, the District would ask the court in its final judgment to retain jurisdiction to enter one or more post-judgment orders, upon application and satisfactory showing by the District,  finding that such obligations are at that time (1) due and owing in the amounts submitted, (2) sufficiently definite to qualify for refunding under the Refunding Law, and (3) that such amounts do not exceed the "not to exceed" amounts set forth in this Petition, and that such obligations are deemed legally binding, incontestable liabilities of the District.

34.    The District intends that the Bonds be secured by the levy and collection of ad valorem taxes within the limits prescribed by law as authorized by the Texas Constitution, Chapter 1207 and the Enabling Legislation.  The District intends to authorize the issuance of the Bonds by adopting a bond order and any supplements thereto, and executing a pricing certificate in connection therewith for each series of Bonds (collectively, the "<u>Bond Orders</u>"), which would authorize the Bonds, set the terms of the Bonds (including the applicable maximum interest rates; provided the net effective interest rate on the Bonds shall not exceed the maximum rate set forth in Chapter 1204, Texas Government Code, as amended), establish the pledge of ad valorem taxes securing the payment of debt service within the limits prescribed by law, and authorize all other matters and agreements necessary for the authorization and issuance of the Bonds.[28]

---

[28] The form of the proposed Bond Order, with forms of documents attached thereto, is attached hereto as Exhibit 12.

# IV.
## APPLICABLE LAWS

### The District's Authority to Issue and Sell Bonds Payable From Ad Valorem Taxes

35.     The Enabling Legislation provides that the District may issue and sell bonds payable from ad valorem taxes[29] to (1) purchase, construct, acquire, repair or renovate buildings and improvements; and (2) equip buildings and improvements for hospital purposes.[30]   The District may impose a tax on all property in the District to "(1) pay the interest on and create a sinking fund for bonds issued or assumed by the district for hospital purposes; and (2) care for indigents."[31]   The District may impose the tax at a rate not to exceed 75 cents on each $100 valuation of all taxable property in the District, and not more than 65 cents of the rate . . . may be imposed in any year to pay the interest on and create a sinking fund for bonds issued or assumed by the district for hospital purposes."[32] The District may issue bonds for such purposes . . . "that are payable from taxes only if the bonds are authorized by a majority of the district voters voting at an election held for that purpose."[33]

36.     Pursuant to the Enabling Legislation, an election (the "Election") was held in the District on August 23, 1975, in which the majority of voters (1) approved the creation of the District "with the authority to levy annual ad valorem taxes at a rate not to exceed 75 cents on the $100 valuation of all taxable property within the District for the purpose of meeting the requirements of the District's bonds (including those assumed) and for the care of indigents," and (2) authorized the issuance of bonds in the principal amount of $4,955,000, and "to levy annually a tax to create an interest and sinking fund sufficient to pay the interest on and principal of said bonds, as the same becomes due and mature, provided such taxes levied for paying the

---

[29] Texas Special District Local Laws Code, §1077.202.
[30] *Id*. at §1077.201.
[31] *Id*. at §1077.251.
[32] *Id*. at §1077.252.
[33] *Id*. at §1077.203.

interest on and creating a sinking fund for bonds (including those assumed) of the District shall not exceed 65 cents on each $100 valuation of taxable property in any one year."[34]

### The District's Authority to Issue Refunding Bonds to Refund General and Special Obligations Without an Election

37.     Article 717k-3 of Vernon's Annotated Texas Civil Statutes ("717k-3"), approved and effective on June 14, 1969, was in effect at the time of the Election.   717k-3 was later codified under Chapter 1207 (together with its predecessor statute, 717k-3, the "Refunding Law").   The Refunding Law authorizes an "issuer", which is defined to include "all . . . hospital districts . . . ," [35]  to issue refunding bonds to refund all or any part of the issuer's "bonds, notes, or *other general or special obligations*" (emphasis added),[36] and that all such refunding bonds "may be issued without an election in connection with the issuance thereof or the creation of any incumbrance therewith; except that if the Texas Constitution would require an election or vote to permit any procedure, action, or matter pertaining to such refunding bonds, then an election to authorize any such procedure, action, or matter shall be held . . . ."[37]  There are no provisions of the Texas Constitution (or Enabling Legislation) requiring an election related to any procedure, action, or matter pertaining to the District's issuance of refunding bonds.[38]   Prior to the enactment of the Refunding Law, hospital districts and many other issuers did not have the general authority to issue refunding bonds, and the Refunding Law set out to remedy that issue

---

[34] *See* Exhibit 2, a true and correct copy of the resolution dated July 22, 1975 calling for an election to confirm the creation of the District.

[35] Vernon's Ann. Civ. St. art. 717k-3, §1 (Texas Gov't Code, §1207.001).

[36] *Id*. at 717k-3, §2 (*Id*. at §1207.002).

[37] *Id*. at 717k-3, §3 (*Id*. at §1207.003).

[38] Further, without a constitutional or statutory election requirement for the issuance of the Bonds, any election held to validate such Bonds would be invalid.  "[T]here can be no valid election if the same has not been called by lawful authority. The rule on this question is thus stated in Cyc., vol. 15, p. 317: 'There can be no valid election without some lawful authority behind it. The right to hold an election cannot exist or be lawfully exercised without express grant of power by the Constitution or Legislature.'" *Countz v. Mitchell*, 120 Tex. 324, 334 (Tex. 1931); *Williams v. Glover*, 259 S.W. 957, 960-961 (Tex. Civ. App – Waco 1924); *Trustees of Ind. Dist. v. Elbon*, 223 S.W. 1039, 1040 (Tex. Civ. App. – Galveston 1916).

by immediately providing issuers, including all hospital districts, with that power; "[t]he fact that no adequate general authority exists for the issuance and exchange of refunding bonds, and the fact that when this Act becomes effective many outstanding issues of bonds can be exchanged and refunded immediately with great benefits to the public . . . ." [39]

38.     The Refunding Law further provides that, "this act shall be cumulative of all other laws on the subject, but *this Act shall be wholly sufficient authority within itself for the issuance of the bonds* and the performance of the other acts and procedures authorized hereby, without reference to any other laws or any restrictions or limitations contained therein, except as herein specifically provided; and when any bonds are being issued under this Act, then to the extent of any conflict or inconsistency between any provision of this Act and any provisions of any other law, the provisions of this Act shall prevail and control; provided, however, that any issuer shall have the right to use the provisions of any other laws, not in conflict with the provisions hereof, to the extent convenient or necessary to carry out any power or authority, express or implied, granted by this Act" (emphasis added).[40]   The Refunding Law provides full and sufficient authority for the District to issue refunding bonds, payable from ad valorem taxes, without an election.

39.     Pursuant to the Refunding Law, the District is authorized to issue refunding bonds to refund all or any part of the District's "bonds, notes, or *other general or special obligations*" (emphasis added).[41]   All of the District's outstanding obligations described herein are lawful obligations of the District arising from the District running its hospital facilities and seeking to provide care to indigents as required by the Texas Constitution and the Enabling Legislation.  As

---

[39] *Id*. at 717k-3, §9.
[40] Vernon's Ann. Civ. St. art. 717k-3, §7 (Texas Gov't Code, §1207.035).
[41] *Id*. at 717k-3, §2 (*Id*. at §1207.002).

such, all such obligations may lawfully be restructured, refinanced and paid with refunding bonds issued pursuant to the District's powers under the Refunding Law.

**The District's Authority to Levy Ad Valorem Taxes to Secure and Repay Refunding Bonds**

40.     The Refunding Law also provides that "such refunding bonds may be secured by and payable from the same source as the obligations being refunded thereby, or may be secured by and made payable from taxes or revenues, or both, or any other or different source, or any combination of sources, if the issuer is otherwise authorized by the Texas Constitution or any statute to secure or pay *any kind or type of bonds by or from any such source*" (emphasis added).[42]  As noted above, the District is authorized to levy an ad valorem tax for the payment of debt service on bonds[43] and would consequently be authorized to levy an ad valorem tax for the payment of debt service on refunding bonds that refunded general or special obligations of the District.

**The District's Authority to Incur the DIP Loan, Subsequent DIP Indebtedness and Prepetition and Unpaid Postpetition Obligations**

41.     The District is authorized under Health and Safety Code, Chapter 315 ("Chapter 315"), to "borrow money for purposes of a hospital owned or operated by the entity . . . . The entity may pledge . . . tax revenue to be collected by the local governmental entity during the 12-month period following the date of the pledge that is not pledged to pay the principal of or interest on bonds."[44]  Chapter 315 also requires loans secured by pledged taxes to mature within one year.[45]  Local Government Code, Chapter 140 ("Chapter 140") authorizes the District to proceed under all federal bankruptcy laws intended to relieve municipal indebtedness and

---

[42] *Id*. at 717k-3, §3 (Texas Gov't Code, §1207.005).
[43] Texas Special District Local Laws Code, §1077.251.
[44] Health & Safety Code, §315.002.
[45] *Id*. at 315.002(c).

provides that the officials and governing body of the District may "take any action necessary or convenient to fully avail the entity of the federal bankruptcy laws." Consequently, the District is authorized to incur the DIP Loan and Subsequent DIP Indebtedness pursuant to Chapter 315 and 11 U.S. Code Sections 364 and 901, as applicable to the District under Chapter 140.

42.     Under the Enabling Legislation, the District has the full responsibility to operate all hospital facilities within the District and to provide medical and hospital care of the indigent persons in the District.[46]  The District, within such broad powers, is authorized to incur and pay the Prepetition and Unpaid Postpetition Obligations.

**The District's Authority to Enter Into Management Agreement**

43.     The District is authorized to enter into the Management Agreement pursuant to Texas Health & Safety Code, §61.056(a), which states that a hospital district may "arrange to provide health care services through . . . a contract with a private provider" and Texas Health & Safety Code, §285.091, which states that a hospital district created under general or special law may, "directly …contract… with any public or private entity as necessary to carry out the functions of or provide services to the district."

**V.**
**CHANGES TO DOCUMENTS**

44.     As to all documents and instruments proposed to be executed, submitted or delivered as set forth herein, prior to the ultimate execution, submission or delivery of any series of the Bonds, the District reserves the right to (1) complete any blanks contained in the forms of any such documents; (2) complete all schedules or exhibits contemplated thereby; (3) correct clerical errors as may be discovered therein; and (4) make all corrections, modifications and

---

[46] *See* Special District Local Law Code, Section 1077.101.

changes necessary so that such documents and instruments at the time ultimately enacted, executed or delivered shall accurately reflect the conditions at the time of such enactment, execution, or delivery, provided such corrections, modifications and changes shall not substantially or materially affect the substance of such documents and instruments, and provided such documents and instruments will reflect the true facts, circumstances and conditions at the time of ultimate execution thereof.  In addition to the foregoing, the District also reserves the right to make such changes (1) as may be suggested or required by the ultimate purchaser(s) or credit enhancer(s) of the Bonds, subject to the approval of the Attorney General of Texas; (2) as may be suggested or required by the Attorney General of Texas prior to trial hereon, or prior to ultimate approval of each series of the Bonds by the Attorney General of Texas; and (3) as may be required or allowed by the Court's final judgment in this case.

## VI.
## PRAYER FOR ORDERS REQUIRED BY CHAPTER 1205

The District respectfully prays that the Court follow the procedures set forth in Chapter 1205 and further prays:

(a)     that the Court, upon presentation of this Petition, immediately enter and issue an Order Giving Notice of Suit (the "Notice Order") in the form of a notice in accordance with Section 1205.041 of Chapter 1205 and attached as Exhibit 1 hereto, directed to all Interested Parties; and that the Notice Order require the Interested Parties, in general terms and without naming them, and the Attorney General of Texas, to appear for hearing and trial at 10:00 o'clock a.m., on the first Monday after the expiration of 20 days from the date of issuance of the Notice Order, and to show cause why the prayers of this Petition should not be granted; and

(b)  that prior to the date set for hearing and trial, the Clerk of this Court[47] provide the required notice of this proceeding pursuant to Section 1205.43 of Chapter 1205 by publishing a substantial copy of the Notice Order in a newspaper of general circulation in Cooke County, Texas, and in Travis County, Texas, with such notice being published once in each of two consecutive calendar weeks, with the date of the first publication to be not less than 14 days prior to the date set for hearing and trial; and

(c)  that the Court grant all proceedings, hearings, and trial on this Petition, priority over all other cases, causes or matters pending in the Court.

## VII.
## PRAYER FOR DECLARATORY JUDGMENT

The District has brought this Chapter 1205 action to provide standing to all Interested Parties and to put to rest any current or future potential legal challenges such that the District may issue the Bonds, levy ad valorem taxes to repay the Bonds within the limits prescribed by law, and enter into such contracts and other obligations, including the DIP Loan, Subsequent DIP Indebtedness, and the Prepetition and Unpaid Postpetition Obligations, as may be needed in order to continue to operate the Hospital and provide indigent care as it is constitutionally and statutorily required to do.   The District requests that the Court proceed expeditiously in accordance with Chapter 1205 and further prays that the Court, after trial and final hearing, enter a final judgment declaring that:

(a)  The District is authorized to issue its limited tax general obligation refunding bonds from time to time, in one or more series as may be necessary, pursuant to Chapter 1207 of the Texas Government Code to restructure and refinance each of

---

[47] To be done by Norton Rose Fulbright US LLP.

the District's general or special obligations established herein without an election in connection with the issuance thereof;

(b)      The District is authorized to levy ad valorem taxes in an amount not to exceed 75 cents on the $100 valuation of all taxable property within the physical boundaries of the District, in order to provide indigent medical care to residents within the District and to pay the Bonds (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the Bonds in any given year);

(c)      The District was and is authorized to incur the liabilities and obligations described herein, namely the DIP Loan Liability, the Subsequent DIP Indebtedness, the Prepetition and Unpaid Postpetition Obligations, the Pension Liability, the Medicare Obligation, and the OIG Obligation (collectively, the "Obligations") in order to operate and maintain the Hospital and provide indigent care prior to and during this bankruptcy proceeding;

(d)      The Obligations, in the not-to-exceed amounts, qualify as general or special obligations of the District under the Refunding Law and are eligible for refunding pursuant to the issuance of bonds in the not-to-exceed principal amounts as set forth in the Petition or herein;

*The DIP Loan Liability*

(e)      The District was authorized to enter into the DIP Loan attached to this Petition as Exhibit 8, and such agreement constitutes a legal, valid, binding and enforceable obligation under State law;

(f)     The DIP Loan Liability, as and when incurred, is a legally binding, incontestable liability of the District, which amount when aggregated with Subsequent DIP Indebtedness shall not exceed $3,600,000;

(g)     The DIP Loan Liability is a "general" or "special" obligation of the District pursuant to §1207.002;

(h)     As of the date hereof, the District has unpaid and owed liability under the DIP Loan of $3,200,000 plus interest thereon, as set forth in Exhibit 13 hereto;

(i)     The District is immediately entitled to issue one or more series of Bonds, in principal amount not to exceed $3,600,000, including costs of issuance of such Bonds, for the purpose of refunding the DIP Loan Liability;

(j)     The District is authorized to issue the Bonds to refund the DIP Loan Liability; provided, however, the District acknowledges approval of such Bonds by the Attorney General is subject to any changes in law which may be enacted by the Texas Legislature or contained in a formal opinion by the Attorney General of Texas, which may occur subsequent to the final judgment in this action;

(k)     Subject to any change in law as described in paragraph (i) above, proceeds from the Bonds may be expended for repayment of the DIP Loan Liability according to the terms thereof;

(l)     The District is authorized to issue, in one or more series, its Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the DIP Loan Liability, which principal amount when aggregated with Subsequent DIP Indebtedness shall not exceed $3,600,000, such

Bonds to be issued in substantially the same form set forth in the proposed Bond Order attached to this Petition as Exhibit 12;

(m)     The District is authorized to levy ad valorem taxes in an amount not to exceed 75 cents on the $100 valuation of all taxable property within the physical boundaries of the District, in order to provide indigent medical care to residents within the District and to pay its Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the DIP Loan Liability (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the bonds of the District, including such Bonds, in any given year);

(n)     The District's Limited Tax General Obligation Refunding Bonds, once issued in one or more series to restructure and refinance the DIP Loan Liability, shall be valid, legal, binding, and enforceable obligations of the District under Texas law payable from and secured by a pledge of ad valorem taxes sufficient to provide for the payment of the principal of, premium, if any, and interest on said bonds, within the limits prescribed by law (not to exceed $0.65 per $100 valuation for interest and sinking fund purposes, and in an amount which together with taxes levied for the care of indigents does not exceed $0.75 per $100 valuation);

(o)     The proposed Bond Order attached to this Petition as Exhibit 12 ordering the issuance and delivery of the District's Limited Tax General Obligation Refunding Bonds, the proceeds of which would restructure and refinance the DIP Loan Liability, is valid and enforceable under Texas law;

*Subsequent DIP Indebtedness*

(p)    Any Subsequent DIP Indebtedness will be a "general" or "special" obligation of the District pursuant to §1207.002 that, when and if issued in the Chapter 9 Proceeding, which amount when aggregated with the DIP Loan Liability shall not exceed $3,600,000;

(q)    The District is authorized to issue the Bonds to refund the Subsequent DIP Indebtedness; provided, however, the District acknowledges approval of such Bonds by the Attorney General, and all actions and contracts related thereto, is subject to any changes in law which may be enacted by the Texas Legislature, contained in a formal opinion by the Attorney General of Texas, which may occur subsequent to the final judgment in this action;

(r)    Subject to any change in law as described in paragraph (p) above, proceeds from the Bonds may be expended for repayment of the Subsequent DIP Indebtedness according to the terms thereof;

(s)    The District is authorized to issue one or more series of Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance Subsequent DIP Indebtedness that, when and if issued in the Chapter 9 Proceeding, which principal amount when aggregated with the DIP Loan Liability shall not exceed $3,600,000, including the costs of issuance of such Bonds, such Bonds to be issued in substantially the same form set forth in the proposed Bond Order attached to this Petition as Exhibit 12;

(t)    The District is authorized to levy ad valorem taxes in an amount not to exceed 75 cents on the $100 valuation of all taxable property within the physical boundaries

of the District, in order to provide indigent medical care to residents within the District and to pay its Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance Subsequent DIP Indebtedness (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the bonds of the District, including such Bonds, in any given year);

(u)     The District's Limited Tax General Obligation Refunding Bonds, once issued in one or more series to restructure and refinance the Subsequent DIP Indebtedness, shall be valid, legal, binding, and enforceable obligations of the District under Texas law payable from and secured by a pledge of ad valorem taxes sufficient to provide for the payment of the principal of, premium, if any, and interest on said bonds, within the limits prescribed by law (not to exceed $0.65 per $100 valuation for interest and sinking fund purposes, and in an amount which together with taxes levied for the care of indigents does not exceed $0.75 per $100 valuation);

(v)     The proposed Bond Order attached to this Petition as Exhibit 12 ordering the issuance and delivery of the District's Limited Tax General Obligation Refunding Bonds to restructure and refinance the Subsequent DIP Indebtedness, is valid and enforceable under Texas law;

*Prepetition and Unpaid Postpetition Obligations*

(w)     The Prepetition and Unpaid Postpetition Obligations are legally binding, incontestable liabilities of the District in the amount that shall not exceed $6,000,000;

(x)     The Prepetition and Unpaid Postpetition Obligations are "general" or "special" obligations of the District pursuant to §1207.002;

(y)     As of the date hereof, there remains $3,829,310.44 unpaid and owing Prepetition Obligations, as set forth in Exhibit 5 hereto;

(z)     As of the date hereof, there are $140,122.53 of other unpaid postpetition obligations of the District, including costs related to (i) the Chapter 9 Proceeding and (ii) the District's affiliation with the DIP Lender and/or its affiliates relating to the long-term lease of the District's hospital facilities, as set forth in Exhibit 5 to the Petition;

(aa)     The District is immediately entitled to issue one or more series of Bonds, in aggregate principal amount not to exceed $4,269,432.97, including costs of issuance of such Bonds, for the purpose of restructuring and refinancing the Prepetition and Unpaid Postpetition Obligations;

(bb)     The District is authorized to issue the Bonds to refund the Prepetition and Unpaid Postpetition Obligations; provided, however, the District acknowledges approval of such Bonds by the Attorney General, and all actions and contracts related thereto, is subject to any changes in law which may be enacted by the Texas Legislature, contained in a formal opinion by the Attorney General of Texas, which may occur subsequent to the final judgment in this action;

(cc)     Subject to any change in law as described in paragraph (aa) above, proceeds from the Bonds may be expended to restructure and refinance the Prepetition and Unpaid Postpetition Obligations;

(dd)     The District is authorized to issue one or more series of Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the Prepetition and Unpaid Postpetition Obligations, in the aggregate principal amount not to exceed $6,000,000, such Bonds to be issued in substantially the same form set forth in the proposed Bond Order attached to this Petition as Exhibit 12;

(ee)     The District is authorized to levy ad valorem taxes in an amount not to exceed 75 cents on the $100 valuation of all taxable property within the physical boundaries of the District, in order to provide indigent medical care to residents within the District and to pay its Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance Prepetition and Unpaid Postpetition Obligations (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the bonds of the District, including such Bonds, in any given year);

(ff)     The District's Limited Tax General Obligation Refunding Bonds, once issued in one or more series to restructure and refinance the Prepetition and Unpaid Postpetition Obligations, shall be valid, legal, binding, and enforceable obligations of the District under Texas law payable from and secured by a pledge of ad valorem taxes sufficient to provide for the payment of the principal of, premium, if any, and interest on said bonds, within the limits prescribed by law (not to exceed $0.65 per $100 valuation for interest and sinking fund purposes, and in an amount which together with taxes levied for the care of indigents does not exceed $0.75 per $100 valuation);

(gg)    The proposed Bond Order attached to this Petition as Exhibit 12 ordering the issuance and delivery of the District's Limited Tax General Obligation Refunding Bonds, the proceeds of which would restructure and refinance the Prepetition and Unpaid Postpetition Obligations, is valid and enforceable under Texas law;

*Pension Liability*

(hh)    The District was authorized to enter into the Pension Plan attached to this Petition as Exhibit 9, and such agreements constitute legal, valid, binding and enforceable obligations under State law;

(ii)    The Pension Liability is a legally binding, incontestable liability of the District in an amount not to exceed $16,600,000;

(jj)    The District's liability to fund the Pension Liability is a "general" or "special" obligation of the District pursuant to §1207.002;

(kk)    The District is immediately entitled to issue one or more series of Bonds, in aggregate principal amount not to exceed $16,600,000, including costs of issuance of such Bonds, for the purpose of refunding the Pension Liability;

(ll)    The District is authorized to issue the Bonds to refund the Pension Liability; provided, however, the District acknowledges approval of such Bonds by the Attorney General, and all actions and contracts related thereto, is subject to any changes in law which may be enacted by the Texas Legislature, contained in a formal opinion by the Attorney General of Texas, which may occur subsequent to the final judgment in this action;

(mm)   Subject to any change in law as described in paragraph (jj) above, proceeds from the Bonds may be expended to restructure and refinance the Pension Liability;

(nn)   The District is authorized to issue one or more series of Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the Pension Liability, in the aggregate principal amount not to exceed $16,600,000, such Bonds to be issued in substantially the same form set forth in the proposed Bond Order attached to this Petition as Exhibit 12;

(oo)   The District is authorized to levy ad valorem taxes in an amount not to exceed 75 cents on the $100 valuation of all taxable property within the physical boundaries of the District, in order to provide indigent medical care to residents within the District and to pay its Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the Pension Liability (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the bonds of the District, including such Bonds, in any given year);

(pp)   The District's Limited Tax General Obligation Refunding Bonds, once issued in one or more series to restructure and refinance the Pension Liability, shall be valid, legal, binding, and enforceable obligations of the District under Texas law payable from and secured by a pledge of ad valorem taxes sufficient to provide for the payment of the principal of, premium, if any, and interest on said bonds, within the limits prescribed by law (not to exceed $0.65 per $100 valuation for interest and sinking fund purposes, and in an amount which together with taxes levied for the care of indigents does not exceed $0.75 per $100 valuation);

(qq)   The proposed Bond Order attached to this Petition as Exhibit 12 ordering the issuance and delivery of the District's Limited Tax General Obligation Refunding

Bonds, the proceeds of which would restructure and refinance the Pension

Liability, is valid and enforceable under Texas law;

*Medicare Obligation*

(rr)    The Medicare Obligation is a legally binding, incontestable liability of the District

in an amount not to exceed $3,450,000;

(ss)    The Medicare Obligation is a "general" or "special" obligation of the District

pursuant to §1207.002;

(tt)    The District is authorized to issue the Bonds to refund the Medicare Obligation;

provided, however, the District acknowledges approval of such Bonds by the

Attorney General, and all actions and contracts related thereto, is subject to any

changes in law which may be enacted by the Texas Legislature, contained in a

formal opinion by the Attorney General of Texas, which may occur subsequent to

the final judgment in this action;

(uu)    Subject to any change in law as described in paragraph (rr) above, proceeds from

the Bonds may be expended to restructure and refinance the Medicare Obligation;

(vv)    The District is authorized to issue one or more series of Limited Tax General

Obligation Refunding Bonds, the proceeds of which will be expended to

restructure and refinance the Medicare Obligation, in aggregate principal amount

not to exceed $3,450,000, including costs of issuance of such Bonds, such Bonds

to be issued in substantially the same form set forth in the proposed Bond Order

attached to this Petition as Exhibit 12;

(ww)    The District is authorized to levy ad valorem taxes in an amount not to exceed 75

cents on the $100 valuation of all taxable property within the physical boundaries

of the District, in order to provide indigent medical care to residents within the District and to pay its Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the Medicare Obligation (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the bonds of the District, including such Bonds, in any given year);

(xx)   The District's Limited Tax General Obligation Refunding Bonds, once issued in one or more series to restructure and refinance the Medicare Obligation, shall be valid, legal, binding, and enforceable obligations of the District under Texas law payable from and secured by a pledge of ad valorem taxes sufficient to provide for the payment of the principal of, premium, if any, and interest on said bonds, within the limits prescribed by law (not to exceed $0.65 per $100 valuation for interest and sinking fund purposes, and in an amount which together with taxes levied for the care of indigents does not exceed $0.75 per $100 valuation);

(yy)   The proposed Bond Order attached to this Petition as Exhibit 12 ordering the issuance and delivery of the District's Limited Tax General Obligation Refunding Bonds to restructure and refinance the Medicare Obligation, is valid and enforceable under Texas law;

*OIG Obligation*

(zz)   The OIG Obligation is a legally binding, incontestable liability of the District in an amount not to exceed $5,100,000;

(aaa)   The OIG Obligation is a "general" or "special" obligation of the District pursuant to §1207.002;

(bbb)   The District is authorized to issue the Bonds to refund the OIG Obligation; provided, however, the District acknowledges approval of such Bonds by the Attorney General, and all actions and contracts related thereto, is subject to any changes in law which may be enacted by the Texas Legislature, contained in a formal opinion by the Attorney General of Texas, which may occur subsequent to the final judgment in this action;

(ccc)   Subject to any change in law as described in paragraph (zz) above, proceeds from the Bonds may be expended to restructure and refinance the OIG Obligation;

(ddd)   The District is authorized to issue one or more series of Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the OIG Obligation, in aggregate principal amount not to exceed $5,100,000, including costs of issuance of such Bonds, such Bonds to be issued in substantially the same form set forth in the proposed Bond Order attached to this Petition as Exhibit 12;

(eee)   The District is authorized to levy ad valorem taxes in an amount not to exceed 75 cents on the $100 valuation of all taxable property within the physical boundaries of the District, in order to provide indigent medical care to residents within the District and to pay its Limited Tax General Obligation Refunding Bonds, the proceeds of which will be expended to restructure and refinance the OIG Obligation (of which not more than 65 cents on the $100 valuation may be imposed to pay principal of and interest on the bonds of the District, including such Bonds, in any given year);

(fff)   The District's Limited Tax General Obligation Refunding Bonds, once issued in one or more series to restructure and refinance the OIG Obligation, shall be valid, legal, binding, and enforceable obligations of the District under Texas law payable from and secured by a pledge of ad valorem taxes sufficient to provide for the payment of the principal of, premium, if any, and interest on said bonds, within the limits prescribed by law (not to exceed $0.65 per $100 valuation for interest and sinking fund purposes, and in an amount which together with taxes levied for the care of indigents does not exceed $0.75 per $100 valuation);

(ggg)   The proposed Bond Order attached to this Petition as Exhibit 12 ordering the issuance and delivery of the District's Limited Tax General Obligation Refunding Bonds, the proceeds of which would restructure and refinance the OIG Obligation, is valid and enforceable under Texas law;

*District Required to Prove Up Remaining Undetermined Amounts*

(hhh)   Upon a satisfactory showing to this Court that the amounts the District is obligated to pay in satisfaction of one or more of the Obligations which, in whole or in part, do not qualify for immediate refunding at the time this Court signs its final judgment prayed for herein, are at that time (1) due and owing in the amounts submitted, (2) sufficiently definite to qualify for refunding under the Refunding Law, and (3) that such amounts do not exceed the "not to exceed" amounts set forth in this Petition, such amounts, by a signed and entered order of this Court, will be deemed legally binding, incontestable liabilities of the District, the District may issue Bonds that meet the requirements of the perimeters heretofore established;

*Issuance of Bonds and Approval of Attorney General*

(iii)    Subsequent to completion of the validation procedures contemplated in this proceeding, or at such time prior thereto as may be required by the procedures for approval of the Bonds by the Attorney General of the State of Texas, the District is authorized to cause to be executed for delivery such further or additional instruments as may be required by the procedures for approval of the Bonds by the Attorney General of the State of Texas;

(jjj)    The District is authorized to proceed to take all actions which the District deems necessary or appropriate to authorize, issue, sell and deliver the Bonds in one or more series from time to time, to a purchaser thereof for cash;

(kkk)   That certified copies of the proceedings herein alleged together with all proposed instruments set forth and alleged herein as required, shall be submitted to the Attorney General of the State of Texas under the provisions of applicable law; that all such proceedings as hereafter approved by the Attorney General shall be fully registered with the Comptroller of Public Accounts of the State of Texas as required by law; and such Bonds proposed to be issued will be subject to approval by the Attorney General of Texas with the effect provided by law;

(lll)    The District is authorized to issue each series of Bonds in substantially the form set forth in the proposed Bond Order attached to this Petition as Exhibit 12, and to make all corrections, modifications and changes necessary so that the documents and instruments necessary or required in connection with the authorization, sale and issuance of such Bonds at the time ultimately enacted, executed or delivered shall accurately reflect the conditions at the time of such enactment, execution, or

delivery, provided such corrections, modifications and changes shall not substantially or materially affect the substance of such documents and instruments, and provided such documents and instruments will reflect the true facts, circumstances and conditions at the time of ultimate execution thereof;

(mmm) The Attorney General of Texas is hereby authorized, subject to changes in applicable law, to approve each series of Bonds in substantially the form set forth in the proposed Bond Order attached to this Petition as Exhibit 12;

The District further prays for such other and further relief and orders to which the District may show itself justly entitled at law or in equity.

Dated: July 28, 2017
Dallas, Texas

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**


By:   _/s/ William R. Greendyke_____.
     William R. Greendyke (SBT 08390450)
     Julie Goodrich Harrison (SBT 24092434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010-3095
Telephone: (713) 651-5151
Facsimile:  (713) 651-5246
william.greendyke@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

AND

Ryan E. Manns (SBT 24041391)
2200 Ross Avenue, Suite 3600
Dallas, Texas  75201-7932
Telephone:  (214) 855-8000
Facsimile:  (214) 855-8200
ryan.manns@nortonrosefulbright.com

AND

Paul Trahan (SBT 24003075)
98 San Jacinto Boulevard, Suite 1100
Austin, Texas  78701-4255
Telephone:  (512) 536-5288
Facsimile:  (512) 536-4598
paul.trahan@nortonrosefulbright.com

**COUNSEL FOR THE DEBTOR AND
DEBTOR-IN-POSSESSION**